UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUMEN VIEW TECHNOLOGY LLC,

                        Plaintiff,

v.

FINDTHEBEST.COM, INC.,

                        Defendant.

No.  13 CV 3599

ECF CASE

JURY TRIAL DEMANDED

**DEFENDANT FINDTHEBEST.COM, INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS**

# Table of Contents

I.      SUMMARY OF ARGUMENT ........................................................................................ 1

II.     STATEMENT OF FACTS ............................................................................................. 3

III.    ARGUMENT ................................................................................................................. 6

   A.   Legal Standard ......................................................................................................... 6

   B.   The '073 Patent Is Invalid Under 35 U.S.C. § 101 ............................................... 7

      1.   The only independent claim of the '073 Patent fails the machine-or-
           transformation test. ............................................................................................. 8

      2.   The only independent claim of the '073 Patent is an abstract idea............................... 13

      3.   The dependent claims of the '073 Patent are also unpatentable. ................................... 15

IV.    CONCLUSION ............................................................................................................ 15

## Table of Authorities

**Cases**

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,

   F.3d, 2013 WL 4749919 (Fed. Cir. Sep. 5, 2013) ............................................................. 11, 12

*Accenture Global Servs. GmbH v. Guidewire Software, Inc.*,

   691 F. Supp. 2d 577, 597-98 (D. Del. 2010) .......................................................................... 8, 12

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*,

   771 F. Supp. 2d 1054 (E.D. Mo. 2011) .......................................................................... 7, 8, 9, 11

*Bilski v. Kappos*,

   130 S. Ct. 3218 (2010)............................................................................... 1, 7, 9, 12, 13, 14, 15

*BuySAFE, Inc. v. Google, Inc.*,

   F.Supp.2d, No. 11–1282–LPS, 2013 WL 3972261, at *3-4 (D. Del. July 29, 2013)......... 12, 13

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,

   717 F.3d 1269 (Fed. Cir. 2013) ................................................................................................. 7

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,

   768 F. Supp. 2d 221 (D.D.C. 2011)....................................................................... 7, 9, 10, 12, 15

*CyberSource Corp. v. Retail Decisions, Inc.*,

   620 F. Supp. 2d 1068 (N.D. Cal. 2009).................................................................................... 7

*CyberSource Corp. v. Retail Decisions, Inc.*,

   654 F.3d 1366 (Fed. Cir. 2011) ........................................................................ 7, 8, 9, 12, 13, 14

*Dealertrack, Inc. v. Huber*,

   674 F.3d 1315, 1317 (Fed. Cir. 2012) ................................................................................ 14, 15

*Diamond v. Diehr*,

   450 U.S. 175, 191-92 (1981) ................................................................................................... 14

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,

   No. 8:12–cv–1324–ODW, 2013 WL 3946579, at *6-7 (C.D. Cal. July 31, 2013) ............ 12, 13

*Ex Parte Cherkas*,

   No. 2009-11287, 2010 WL 4219765, at *3 (B.P.A.I. Oct. 25, 2010)......................................... 9

*Fleming v. Pickard*,

   581 F.3d 922, 925 (9th Cir. 2009) ............................................................................................ 6

*Glory Licensing LLC v. Toys R Us, Inc.,*

    No. 09-4252 (FSH), 2011 WL 1870591 (D.N.J. May 16,2011)................................................. 7

*Gottschalk v. Benson,*

    409 U.S. 63, 70 (1972)......................................................................................................... 12, 14

*Graff/Ross Holdings LLP v. Fed. Home Loan Mortg. Corp.,*

    No. 07-796 (RJL)(AK), 2010 WL 6274263 (D.D.C. Aug. 27, 2010) ........................................ 7

*In re Bilski,*

    545 F.3d 943, 950 (Fed. Cir. 2008) .................................................................................. 7, 8, 13

*In re Comiskey,*

    554 F.3d 967, 980 (Fed. Cir. 2009) ......................................................................................... 14

*In re Ferguson,*

    558 F.3d 1359, 1364 (Fed. Cir. 2009) ................................................................................. 8, 13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*

    132 S.Ct. 1289, 1297 (2012)..................................................................................................... 11

*SiRF Tech., Inc. v. lTC,*

    601 F.3d 1319, 1333 (Fed. Cir. 2010) ....................................................................................... 8

**Statutes**

35 U.S.C. § 101................................................................................ 1, 6, 7, 9, 13, 15, 16

Federal Rule of Civil Procedure 1 ................................................................................................. 6

Federal Rule of Civil Procedure 12(c).......................................................................................... 6

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller,

    Federal Practice and Procedure § 1342 (3d ed. 2004) ................................................................ 6

## I.   SUMMARY OF ARGUMENT

U.S. Patent No. 8,069,073 (the "'073 Patent") does not claim patent-eligible subject matter.[1]  It is invalid, therefore, under 35 U.S.C. Section 101.  Several recent cases from the U.S. Supreme Court and the Federal Circuit confirm that covering abstract ideas in a veneer of computer implementation does not render the abstract ideas patentable.  The Supreme Court confirmed as much in *Bilski v. Kappos*, 130 S. Ct. 3218 (2010), holding that abstract ideas are unpatentable.  Claims must set forth meaningful limitations to make an abstract, unpatentable concept a concrete, patentable invention.  Recent Federal Circuit cases applying *Bilski* demonstrate that merely implementing well known methods and processes with the aid of general-purpose computers does not make the abstract ideas patentable.

The '073 Patent claims only the abstract idea of "multilateral analyses" of "preference data" and computing a "closeness of fit value" based on those analyses.  Put differently, the '073 Patent claims retrieving a stored list of preferences provided by one party, retrieving a similar stored list of preferences from another party, comparing the lists to determine how closely the preferences of the first party match the preferences of the second party, and generating a list to the parties.  Marriage matchmakers (as only one example) have been performing this function for centuries without the aid of computers.

The '073 Patent contains nine method claims—one independent claim and eight dependent claims.  Independent Claim 1 claims three processes that any general-purpose computer can be programmed to perform: 1) retrieving two sets of data: one from a consumer and one from sellers/service providers; 2) analyzing the data sets to provide a closeness-of-fit between a

---

[1] A nearly identical motion is being filed concurrently in the related case No. 13 cv 3386.

consumer and the sellers/service providers; and 3) providing a list matching the consumer with at

least one seller/service provider.

Although the claims recite the terms "computer-implemented," "computer," and "digital

storage medium," these are merely generic recitations of general-purpose computers.  People

can—and have—performed all the steps of the claims in the '073 Patent manually.  On their face,

not a single limitation claims a special-purpose computer necessary to perform the steps.  Indeed,

the specification does not mention a computer at all when discussing the embodiments in Figures

1 and 2, and says plainly that the processors and analyzers of the embodiment in Figure 3:

> [M]ay be implemented as computer processes running on *multiple computers* in
> communication with one another (for example over a network, including the
> Internet), or as processes running on a *single computer*.

'073 Patent 3:66-13:9; 13:43:46 (emphasis added).

In addition, the '073 specification says that embodiments of the invention "may employ conjoint

analysis" as the "multilateral analyses" in the third limitation of Claim 1.  Indeed, the specification

explicitly says that one can use conjoint analysis as multilateral analysis:

> [A]nd delivering a list matching at least one party and the at least one
> counterparty according to analysis of preference profiles determined using
> conjoint analysis of the party responses and the counterparty responses.

'073 Patent 1:63-67.

The specification also establishes "Commercial Use of Conjoint Analysis" as far back as 1982,

seventeen years *before* the filing of the priority patent application to the '073 Patent.  '073 Patent

3:13-24.

Moreover, none of the claims disclose transformation of any article into a different state or

thing.  Merely adding the term "computer" to a claim does not render it patentable.  Because the

'073 Patent claims nothing more than the abstract idea of a consumer and a seller/service provider

deciding to do business together, it is invalid on its face.

2.

No discovery is needed to resolve the patentability of the claims and there are no claim construction issues that bear on the issue of abstract ideas being unpatentable subject matter. Accordingly, the Court should enter judgment on the pleadings to preserve its resources and the resources of the parties and to avoid unnecessary litigation.

## II.   **STATEMENT OF FACTS**

The '073 Patent issued on November 29, 2011, to inventors Eileen C. Shapiro and Steven J. Mintz.  Claim 1 of the '073 Patent reads:

> A computer-implemented method for facilitating evaluation, in connection with the procurement or delivery of products or services, in a context of at least one of (i) a financial transaction and (ii) operation of an enterprise, such context involving a first class of parties in a first role and a second class of counterparties in a second role, the method comprising:
>
> in a first computer process, retrieving first preference data from a first digital storage medium, the first preference data including attribute levels derived from choices made by at least one of the parties in the first class;
>
> in a second computer process, retrieving second preference data from a second digital storage medium, the second preference data including attribute levels derived from choices made by at least one of the counterparties in the second class;
>
> in a third computer process, for a selected party, performing multilateral analyses of the selected party's preference data and the preference data of each of the counterparties, and computing a closeness-of-fit value based thereon; and
>
> in a fourth computer process, using the computed closeness-of-fit values to derive and provide a list matching the selected party and at least one of the counterparties.

'073 Patent 18:32-55.

The specification describes that the invention is nothing more than a system by which parties evaluate whether a proposed transaction is beneficial to them.  Figure 1 is an exemplary embodiment:

3.



Obtain from each party in a first
class responses to a first set of
questions, and store

11

Obtain from each counterparty in
a second class responses to a
second set of questions, and store

12

Derive a first preference profile
for each of parties

13

Derive a second preference
profile for each of counterparties

14

Analyze preference profiles, to
derive a list, for each party, of
counterparties providing a
relatively close fit of preferences

15

Communicate list of closely
fitting counterparties to each
party

16

*FIG. 1*

As demonstrated above, the patent contemplates two parties to a transaction: a party and

one or more counterparties. In the Fig. 1 embodiment, the underlying transaction is between a

4.

person and an organization.  '073 Patent 4:62-63.  The person seeks entry into an organization that is a good fit relative to other organizations, while the organization seeks to admit a person that will be successful.  '073 Patent 4:63-5:1.  The embodiment then contemplates asking questions of each party to create a "preference profile" for the party and counterparty.  '073 Patent 5:6-17.  The embodiment then analyzes the preference profiles for a "closeness-of-fit" between the profiles of the party and counterparty.  '073 Patent 5:17-19.  The transaction may also involve two organizational parties (rather than a person and an organization) or two people.  '073 Patent 5:26-49.  In addition, the parties may elicit input from "co-evaluators," who similarly answer questions to provide a "useful perspective on the party or counterparty's preference profile."  '073 Patent 10:63-64.

The specification discloses any number of situations that can use the claimed methods:

- "enrollment at a college or university or a private school …";[2]

- "employment by an entity …";[3]

- "engagement of a physician or health maintenance organization …";[4]

- "choosing a retirement community";[5]

- "investing in a mutual fund";[6]

- "taking a vacation";[7]

- "in executing a merger or joint venture or acquisition";[8] or

---

[2] '073 Patent 3:35-37; see also '073 Patent 5:2-3; 10:51-58.
[3] '073 Patent 3:37-39; see also '073 Patent 5:4-5; 12:54-58.
[4] '073 Patent 3:39-41.
[5] '073 Patent 3:41.
[6] '073 Patent 3:41-42
[7] '073 Patent 3:42
[8] '073 Patent 3:42-43; see also '073 Patent 5:30; 5:43; 10:58-62.

- labor negotiations.[9]

While the specification provides that the analysis may be performed by a computer (or multiple computers), '073 Patent 13:10-18:24, people can also perform such analysis *manually*. '073 Patent 3:66-13:9. Indeed, as the exemplar transactions above amply demonstrate, people have performed such analysis manually for centuries.

## III.   ARGUMENT

The '073 Patent recites an abstract, and ancient, idea of parties evaluating whether they are a good fit for each other. Recent case law establishes that such abstract ideas are not patentable under 35 U.S.C. § 101.

### A.   Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The objective of Federal Rule 12 is to expedite and simplify the pretrial phase of federal litigation ...." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1342 (3d ed. 2004). Rule 12 furthers the mandate in Federal Rule 1 for "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. By making this motion early in the proceedings, FindTheBest hopes to resolve this matter as quickly and efficiently as possible.

The Court should grant judgment on the pleadings when the moving party establishes that, even if all of the facts pled are true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). In resolving this motion, Plaintiff's allegations are assumed to be true and all reasonable inferences should be drawn in Plaintiff's favor. *Id.* There are no factual issues relevant to this motion; judgment of invalidity based solely on the pleadings in this case is warranted because the '073 Patent is invalid on its face.

---

[9] '073 Patent 5:59-6:1; 12:39-41.

The question of whether the '073 Patent is drawn to patent-eligible subject matter is a "threshold inquiry." *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd, Bilski v. Kappas*, 130 S. Ct. 3218 (2010).  Thus, where a patent that is invalid on its face has been and no discovery or extraneous facts are needed, judgment on the pleadings should be issued.  *See, e.g., CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 768 F. Supp. 2d 221 (D.D.C. 2011), *aff'd CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 771 F. Supp. 2d 1054 (E.D. Mo. 2011); *Glory Licensing LLC v. Toys R Us, Inc.*, No. 09-4252 (FSH), 2011 WL 1870591 (D.N.J. May 16,2011); *CyberSource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068 (N.D. Cal. 2009), aff'd, 654 F.3d 1366 (Fed. Cir. 2011); *Graff/Ross Holdings LLP v. Fed. Home Loan Mortg. Corp.*, No. 07-796 (RJL)(AK), 2010 WL 6274263 (D.D.C. Aug. 27, 2010) (Report and Recommendation of Magistrate Kay).

### B.    The '073 Patent Is Invalid Under 35 U.S.C. § 101

The '073 Patent does not disclose "any new [or] useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  As such it is not valid under 35 U.S.C. § 101.  Although Section 101 is broad and provides liberally for patentable subject matter, it is not limitless.  Over the years case law has developed three well-known exceptions to patentable subject matter under 35 U.S.C. § 101: (1) laws of nature; (2) physical phenomena; and (3) abstract ideas.  *See, e.g., Bilski*, 130 S. Ct. at 3225.  These exceptions are consistent with and reinforce Section 101's mandate for "new and useful" inventions.  *See id.*

Courts have developed a number of tests to assist in deciphering an abstract idea from a patentable process.  While there is currently no single "per se" test to distinguish abstract ideas from patentable processes, the machine-or-transformation test comes closest.  *See id.* at 3221.  The machine-or-transformation test makes two inquiries about an invention: (1) is the invention tied to a particular machine or apparatus and (2) does the invention transform a particular article into a different state or thing?  If the answer to those questions is no, the invention is not patentable.  *Id.* Unnecessary or non-limiting language is not enough to satisfy the test.  The use of a specific

7.

machine or a specific transformation "must impose meaningful limits on the claim's scope to impart patent-eligibility." *In re Bilski*, 545 F.3d at 961-62.

A machine will only "impose a meaningful limit on the scope of a claim [when it plays] a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations." *SiRF Tech., Inc. v. lTC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010). A computer is not a significant part of the process if that process can be performed without a computer. *See CyberSource*, 654 F.3d at 1375 ("[M]erely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prfong of the machine-or-transformation test."). The '073 Patent fails the machine-or-transformation test. In the '073 Patent, a machine does not play a significant part in performing the claimed method; it merely permits the claimed solution to be performed more quickly. In addition, the '073 Patent does not transform any particular article. Even apart from the machine-or-transformation test, the '073 Patent is invalid because it claims an abstract idea, which is a legally-recognized exception to patentability.

1. The only independent claim of the '073 Patent fails the machine-or-transformation test.

a. *Claim 1 is not tied to any particular machine.*

Claim 1 is not tied to any particular machine. To pass the machine portion of the machine-or-transformation test, claims must be tied to a "concrete" machine, one with "parts" or "certain devices" or a combination of devices. *SiRF Tech., Inc*, 601 F.3d at 1332 (*citing In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009)). Merely adding computer limitations to claims of generic recitations of a well-known method is not enough and "not every patent that recites a machine... passes the machine-or-transformation test." *Bancorp. Servs.*, 771 F. Supp. 2d at 1063; *see also Accenture Global Servs. GmbH v. Guidewire Software, Inc.*, 691 F. Supp. 2d 577, 597-98 (D. Del. 2010). As the Federal Circuit sitting *en banc* recently noted, "adding generic computer functions

8.

to facilitate performance provides no substantial limitation and therefore is not enough to satisfy § 101." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1287 (Fed. Cir. 2013) (*CLS Bank*).

Although claim 1 recites a "computer-implemented method," a "computer process," and "digital storage medium," such terms are nothing more than "insignificant extra-solution[s]." *Bilski*, 545 F.3d at 957-58 n.14, 962; *see also Bancorp Servs.*, 771 F. Supp. 2d at 1065 ("The recitation of the computer, computer system, and computer readable media do not satisfy the 'machine' prong of the machine-or-transformation test."); *CLS Bank*, 717 F.3d at 1286 ("In a claimed method comprising an abstract idea, generic computer automation of one or more steps evinces little human contribution."). Claim 1 recites no structural limitations that narrow the "computer-implemented method" to something more specific than a general-purpose computer, nor are there any specific operations performed in the claims that would structurally define the "computer." *Ex Parte Cherkas*, No. 2009-11287, 2010 WL 4219765, at *3 (B.P.A.I. Oct. 25, 2010) (Claims in patent application are invalid under 35 U.S.C. § 101 because they "neither refer to a specific machine by reciting structural limitations that narrow the computer implemented method to something more specific than a general purpose computer, nor recite any specific operations performed that would structurally define the computer.").

Rather, the claim itself and the specification make clear that the processes disclosed in the claim can be, and historically have been, performed manually. For example, Claim 1 recites "A … method for facilitating evaluation, in connection with the procurement or delivery of products or services…" The specification provides examples of such transactions as students applying for college admission or a prospective employee applying for a job. '073 Patent 5:2-5. Students and colleges have been "performing multilateral analyses" of each other's "preference data" for hundreds of years. Using a computer to speed up the process "does not meaningfully limit claim scope for purposes of patent eligibility." *CLS Bank*, 717 F.3d at 1286.

The Federal Circuit held that claims very similar to those in the '073 Patent were invalid under Section 101 for failing to disclose anything more than a mental process. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011). In *Cybersource*, the asserted

patent recited a "'method and system for detecting fraud in a credit card transaction between [a] consumer and a merchant over the Internet.'" *Id.* at 1367 (citation omitted). One of the asserted claims of the patent recited "A computer readable medium containing program instructions" for detecting fraud in credit card transactions by obtaining credit card information and verifying the credit card information by: (1) obtaining information about other transactions that have utilized an Internet address that is identified with the credit card transaction; (2) constructing a map of the credit card numbers based upon the other transactions; and (3) utilizing the map to determine if the transaction is valid. *See id.* at 1373. The Federal Circuit held that all three steps for verifying the credit card information can be performed in the human mind or by a human using a pen and paper. *See id.* at 1372. The Court specifically noted that the claim is not limited to a particular fraud detection algorithm. Rather, regardless of how claim language is crafted, the underlying invention is a method for detecting credit card fraud which is only aided by a computer. *See id.* at 1374-75.

Even more recently, the patents at issue in *CLS Bank* related to the management of risk in financial transactions by using a third party to settle the transactions, in other words the use of an escrow. In finding the patents invalid under § 101, the court noted: "The concept of reducing settlement risk by facilitating a trade through third-party intermediation is an abstract idea because it is a 'disembodied' concept... a basic building block of human ingenuity, untethered to any real-world application. ... The analysis therefore turns to whether the balance of the claim adds 'significantly more.'" *CLS Bank*, 717 F.3d at 1286. The court then addressed the patents' requirement for computer implementation:

> First, the requirement for computer implementation could scarcely be introduced with less specificity; the claim lacks any express language to define the computer's participation. In a claimed method comprising an abstract idea, generic computer automation of one or more steps evinces little human contribution. There is no specific or limiting recitation of essential...or improved computer technology...and no reason to view the computer limitation as anything but "insignificant postsolution activity" relative to the abstract idea... ***Furthermore, simply appending generic computer functionality to lend speed or efficiency to the performance of an otherwise abstract concept does not meaningfully limit claim scope***

> ***for purposes of patent eligibility.*** … At its most basic, a computer is just a calculator capable of performing mental steps faster than a human could. Unless the claims require a computer to perform operations that are not merely accelerated calculations, a computer does not itself confer patent eligibility. In short, the requirement for computer participation in these claims fails to supply an "inventive concept" that represents a nontrivial, nonconventional human contribution or materially narrows the claims relative to the abstract idea they embrace.

*Id.* (emphasis added).

Finally, in *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, --- F.3d ----, 2013 WL 4749919 (Fed. Cir. Sep. 5, 2013) (*Guidewire*), the court held that the method *and system* claims of a patent for "handling insurance-related risks" were invalid. In *Guidewire*, the court stated that the patent at issue was directed to the abstract idea of "'generating tasks [based on] rules ... to be completed upon the occurrence of an event.'" *Id.* at *8. The court then engaged in a preemption analysis to see if there were substantive limitations that narrowed the claims. In finding no such limitations, the court held:

> Regarding Accenture's argument concerning the complexity of the specification, including the specification's detailed software implementation guidelines, the important inquiry for a § 101 analysis is to look to the claim. "When the insignificant computer-based limitations are set aside from those claims that contain such limitations, the question under § 101 reduces to an analysis of what additional features remain in the claims." *Bancorp*, 687 F.3d at 1279 (*citing Mayo [Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289], 1297 [(2012)]). The limitations of claim 1 are essentially a database of tasks, a means to allow a client to access those tasks, and a set of rules that are applied to that task on a given event. Although the specification of the '284 patent contains very detailed software implementation guidelines, the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer. The limitations of the system claims of the '284 patent do not provide sufficient additional features or limit the abstract concept in a meaningful way. In other words, the complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method.

*Id.* at *9. Thus, not only were the method claims invalid, but the system claims were invalid as well. *Id.*

11.

Similarly, the underlying inventions claimed in the '073 Patent are merely the mental process of two parties deciding to do business together. Claim 1 recites "retrieving first preference data" from a first party, "retrieving second preference data" from one or more counterparties, analyzing each party's preference data, "computing a closeness-of-fit value based thereon," and finally "deriv[ing] and provid[ing] a list matching the selected party and at least one of the counterparties." '073 Patent 18:39-55.  Although these claims recite that a computer retrieves data from a digital storage medium, performs the analysis, and provides the list, as in *Cybersource* and *CLS Bank*, the computer in reality is just performing the mental process disclosed in the claims— the same mental process humans have performed for thousands of years without computers.  The recited computer does not play a significant part in permitting the claimed method to be performed and does not limit the abstract idea in any meaningful way.  *See Cybersource*, 654 F.3d at 1375-76; *CLS Bank*, 717 F.3d at 1286-87; *Guidewire*, 2013 WL 4749919 at \*9; *see also Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, No. 8:12–cv–1324–ODW, 2013 WL 3946579, at \*6-7 (C.D. Cal. July 31, 2013); *BuySAFE, Inc. v. Google, Inc.*, --- F.Supp.2d ----, No. 11–1282–LPS, 2013 WL 3972261, at \*3-4 (D. Del. July 29, 2013).

### b.  *Claim 1 does not transform any article.*

Claim 1 also does not transform any article.  When a process does not include a particular machine, then "[t]ransformation and reduction of an article 'to a different state or thing' is the clue to ... patentability."  *Gottschalk v. Benson*, 409 U.S. 63, 70 (1972); see also *Bilski*, 130 S. Ct. at 3226-27.  The mere manipulation and reorganization of data does not satisfy the transform prong of the machine-or-transformation test.  *See CyberSource*, 654 F.3d at 1375.  Collecting and organizing data also is not a "transformation" for purposes of the machine-or-transformation test.  *See id. at 1370* ("The mere collection and organization of data regarding credit card numbers and Internet addresses is insufficient to meet the transformation prong of the test."); *see also Accenture*, 691 F. Supp. 2d at 596.

The '073 Patent discloses nothing more than obtaining responses to questions from a party and several counterparties, analyzing those responses to see which counterparties' preferences

12.

most closely align with the party's preferences, and then providing the party with a list of those counterparties that most closely align with the party's preferences. '073 Patent, at col. 4:1-5:19, 18:32-55. This disclosure shows that all the steps (claimed to be performed by a computer) merely involve gathering and manipulation of data. Such a process fails to transform a specific article into a different state or thing. *In re Bilski*, 545 F.3d at 962.

The Federal Circuit has made clear that

> [p]urported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances.

*Id.* at 963 (emphasis added); *see also In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009) ("Nor do Applicants' methods, as claimed, transform any article into a different state or thing. At best it can be said that Applicants' methods are directed to organizing business or legal relationships.... "). The purported inventions in the '073 Patent cover nothing more than the manipulation and organization of data and thus do not meet the transform portion of the machine-or-transformation test. *See Digitech Image Technologies, LLC*, 2013 WL 3946579 at *6-7; *BuySAFE, Inc. v. Google, Inc.*, --- F.Supp.2d ----, 2013 WL 3972261 at *3-4.

2.    The only independent claim of the '073 Patent is an abstract idea.

On its face, the '073 Patent is directed to abstract concepts that are not patentable. The Supreme Court has made clear that while the machine-or-transformation test may be helpful, there is currently no single, per se test for what is patentable under 35 U.S.C. § 101 and the analysis cannot simply stop there. *See CyberSource*, 654 F.3d at 1371; *Bilski*, 130 S. Ct. at 3227. Therefore, even though the '073 Patent is not tied to any particular machine and does not transform any article, the Court must still consider whether the patent is really directed to abstract ideas such as "mental processes, and abstract intellectual concepts" that "are not patentable." *Benson*, 409 U.S. at 67.

13.

Nothing in the claims of the '073 Patent is tied to any physical article or any non-abstract concept. Claim 1 recites "facilitating evaluation," "retrieving … data", "performing multilateral analyses of the … data," and "deriv[ing] and provid[ing] a list." '073 Patent, Claim 1.  The wording of the claim itself and the description in the specification establish that everything in the claim can be performed in a person's mind (or with a pen and paper) and "methods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas." *CyberSource*, 654 F.3d at 1371 (*citing Benson*, 409 U.S. at 67).  Indeed, the '073 Patent itself says that the analysis it claims can be performed "using conjoint analysis of the party responses and counterparty responses" ('073 Patent 1:63-67) and that people have used conjoint analysis of commercial transactions since at least 1982 ('073 Patent 3:13-24). "[T]he prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment [such as implementing the idea with a general-purpose computer].'"  *Bilski*, 130 S. Ct. at 3230 (*quoting Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981)).

The Federal Circuit has consistently "'refused to find processes patentable when they merely claimed a mental process standing alone and untied to another category of statutory subject matter[,] even when a practical application was claimed.'"  *CyberSource*, 654 F.3d at 1372 (*quoting In re Comiskey*, 554 F.3d 967, 980 (Fed. Cir. 2009)).  The Federal Circuit reiterated this holding in *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1317 (Fed. Cir. 2012).  In *Dealertrack*, the patents at issue were directed to a "computer-aided method and system... for processing credit applications over electronic networks." *See id.* at 1317.  The court found that the claimed process included three steps: "receiving data from one source (step A), selectively forwarding the data (step B), performed according to (step D), and forwarding reply data to the first source (step C)." *Id.* at 1333.  The court concluded that the claims did not require a specific application nor were they tied to a particular machine; rather the computer was merely recited to aid in the underlying process. *See id.* at 1333-1334.  The court held that "The claim 'explain[s] the basic concept' of processing information through a clearing-house" and that "[n]either Dealertrack nor any other

14.

entity is entitled to wholly preempt the clearinghouse concept." *Id.* at 1333 (*quoting Bilski*, 130 S. Ct. at 3231); *see also CLS Bank,* 717 F.3d at 1287 ("[U]pholding Alice's claims to methods of financial intermediation 'would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea.'").

Similarly, Lumen View is not entitled to wholly preempt the computer-aided multilateral analysis concept. For centuries, people have applied the abstract idea of two parties evaluating each other to see if they are a good fit for a proposed transaction by using their own analysis, thoughts, verbal acknowledgements, and due diligence processes. Students and colleges, employers and employees, business and individuals, men and women interested in dating or marriage, and parties to business transaction have applied the type of multilateral analysis claimed in the '073 Patent. Once the "highly stylized language, hollow field-of-use limitations, [and] the recitation of post-solution activity"[10] is removed, the '073 Patent claims nothing less than the general concept of two parties evaluating whether to do business together. As such Claim 1 of the '073 Patent is not valid under Section 101.

3.   The dependent claims of the '073 Patent are also unpatentable.

The dependent claims similarly claim unpatentable subject matter and are thus invalid under 35 U.S.C. § 101 for the same reasons as set forth above. The vast majority of the dependent claims simply add non-functional limitations to the independent claims, such as ranking the list of counterparties (claim 2), using data from co-evaluators (claim 3), revealing the value a party or counterparty places on each attribute (claims 4-7), or using the internet (claims 8-9). None of the dependent claims recite any special-purpose machine or other concrete limitations that bring the claims from abstract, unpatentable business processes into patentable subject matter. Because none of the dependent claims add any meaningful limitations in scope, they too are unpatentable under 35 U.S.C. § 101.

---

[10] *CLS Bank*, 717 F.3d at 1281.

## IV.   CONCLUSION

On its face, the '073 Patent is directed to an abstract concept.  Wasting the parties' time and resources in conducting discovery will not change that.  The Court should conserve it and the parties' resources, and find that the patent is invalid.

Dated:   September 23, 2013

Respectfully submitted,

By:   /s/ Joseph S. Leventhal
JOSEPH S. LEVENTHAL
(*pro hac vice*)
THE LEVENTHAL LAW FIRM, APC
600 West Broadway, Suite 700
San Diego, CA 92101
Ph: (619) 356-3518
Fx: (619) 615-2082
jleventhal@leventhallaw.com

16.

## CERTIFICATE OF SERVICE

This is to certify that on September 23, 2013, a copy of **DEFENDANT FINDTHEBEST.COM, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS** was served by electronic notification to all registered counsel.

By:  /s/ Danette Reando_____
PARALEGAL TO
JOSEPH S. LEVENTHAL
THE LEVENTHAL LAW FIRM, APC