UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
Lumen View Technology LLC,             :
                                       :
                    Plaintiff,         :      13 CIV. 3599 (DLC)
                                       :
          -v-                          :      OPINION & ORDER
                                       :
Findthebest.com, Inc.,                 :
                                       :
                                       :
                    Defendant.         :
                                       :
-------------------------------------- X


APPEARANCES

For the plaintiff:

Damian Wasserbauer
Aeton Law Partners, LLP
101 Centerpoint Drive, Suite 105
Middletown, CT 06457

For the defendant:

Joseph Leventhal
Leventhal Law, LLP
600 West Broadway, Suite 700
San Diego, CA 92101


DENISE COTE, District Judge:

     On September 24, 2013, defendant Findthebest.com, Inc.

("Findthebest") moved for judgment on the pleadings in this

patent infringement action pursuant to Fed. R. Civ. P. 12(c) on

the ground that the patent on which plaintiff Lumen View

Technology LLC ("Lumen View") predicates its claim for

infringement is invalid for failure to claim patent-eligible subject matter.  For the reasons that follow, the patent claims the abstract idea of computer assisted matchmaking and is invalid under 35 U.S.C. § 101 ("Section 101").  The defendant's motion for judgment on the pleadings is granted.


BACKGROUND

Findthebest is a corporation that operates a website which matches users with goods or services according to criteria they enter.  Lumen View is a company that owns patents and licenses them to other users for fees.  On May 29, 2013, Lumen View brought suit against Findthebest on the ground that the matching process in Findthebest's website allegedly infringed a patent owned by Lumen View.  That patent is United States Patent No. 8,069,073 ("'073 patent").

The '073 patent

The '073 patent is entitled "System and Method for Facilitating Bilateral and Multilateral Decision-Making."  It is comprised of one independent claim and eight dependent claims. The application for the patent was filed in April 2010, and the patent was issued on November 29, 2011.  The April 2010 application was a "continuation of application" for the invention claimed by this patent, and the initial application was made in 1999.  The inventors of the '073 patent are listed

as Eileen C. Shapiro and Steven J. Mintz.  Listed as the
assignee of the patent is a limited liability company called
Dalton Sentry, LLC.  Lumen View asserts that it is "the
exclusive licensee of the '073 patent and possesses all rights
of recovery under the '073 patent, including the right to sue
and recover all damages for infringement thereof, including past
infringement."

The Independent Claim ("Claim 1") of the '073 patent

The independent claim of the '073 patent ("Claim 1") states
in full:

> We claim: A computer-implemented method for facilitating
> evaluation, in connection with the procurement or delivery
> of products or services, in a context of at least one of
> (i) a financial transaction and (ii) operation of an
> enterprise, such context involving a first class of parties
> in a first role and a second class of counterparties in a
> second role, the method comprising:
> In a first computer process, retrieving first
> preference data from a first digital storage medium, the
> first preference data including attribute levels derived
> from choices made by at least one of the parties in the
> first class;
> In a second computer process, retrieving second
> preference data from a second digital storage medium, the
> second preference data including attribute levels derived
> from choices made by at least one of the counterparties in
> the second class;
> In a third computer process, for a selected party,
> performing multilateral analyses of the selected party's
> preference data and the preference data of each of the
> counterparties, and computing a closeness-of-fit value
> based thereon; and
> In a fourth computer process, using the computed
> closeness-of-fit values to derive and provide a list
> matching the selected party and at least one of the
> counterparties.

The "summary of the invention" provision of the patent elaborates that:

> The method involves supplying to at least one of the parties a series of forced choice questions[1] so as to elicit party responses; supplying to at least one of the counterparties a series of forced choice questions so as to elicit counterparty responses; and delivering a list matching the at least one party and the at least one counterparty according to analysis of preference profiles determined using conjoint analysis of the party responses and the counterparty responses.  In alternative embodiments the list may be ranked according to closeness of fit.

In summary, the purported invention disclosed by the '073 patent is a method of matchmaking whereby one or more parties on each side input attribute preferences and intensity of preference data and then a computer matches the parties on each side by a "closeness-of-fit" process and produces a list.

The patent also contains in its specification examples illustrating potential uses of the claimed process.  One example is the matching of job applicants with employers based on both parties' preferred attributes in applicants and employers, respectively.  The specification contemplates having each party disclose desired attributes, and intensity of preferences with respect to those attributes, and then having a computer match employees and employers whose desired attributes and intensities of preferences mutually align.  Also listed as an exemplar use of the '073 patented method is the matching of "college

---

[1] A forced choice question is a question with a closed set of possible responses.

applicants and . . . colleges seeking applicants" by having each input preference data.

The Dependent Claims of the '073 patent

Claims 2 through 9 of the '073 patent are all dependent on Claim 1.  They purport to add limitations to Claim 1's claimed process of computerized bilateral and multilateral decision-making.  The claims are as follows:[2]

>2. A method according to claim 1, wherein the list is ranked according to closeness of fit.
>3. A method according to claim 1, further comprising receiving co-evaluator choices made by a party co-evaluator or a counterparty co-evaluator, wherein the list matches the at least one party and the at least one counterparty according to a multilateral analysis of preference data determined using such co-evaluator choices.
>4. A method according to claim 1, wherein the party choices reveal, with respect to each level of each of a first series of attributes, a utility value which indicates the value that the party places on the level of the attribute.
>5. A method according to claim 4, wherein the party choices reveal the utility values without the utility values being provided explicitly.
>6. A method according to claim 4, wherein the counterparty choices reveal, with respect to each level of each of a second series of attributes that complements the first series of attributes, a utility value which indicates the value that the counterparty places on the level of the attribute.
>7. A method according to claim 6, wherein the counterparty choices reveal the utility values without the utility values being provided explicitly.
>8. A method according to claim 1, wherein at least one of the first preference data, second preference data, and the list is obtained from a remote server over a communication network.

---

[2] The parties have not construed these dependent claims.  All claim construction has focused on the terms in Claim 1.

9. A method according to claim 1, wherein the party choices and the counterparty choices are provided to a remote server over a communication network.

All of these method claims are expressly predicated on Claim 1.[3]  Claim 2 (perhaps redundantly) claims the closeness of fit component of Claim 1's computerized bilateral and multilateral decision-making process claim.  Claim 3 claims the process of inclusion of a "co-evaluator's data in the multilateral analysis.[4]  Claim 4 claims the process of attributing a utility value, indicating the value a party places on an attribute.  Claim 5 permits the utility values to be created but not revealed to the participants.  Claims 6 and 7 are identical to Claims 4 and 5 but are applied to a counterparty, rather than the initial party.  Claims 8 and 9 allow the process claimed in Claim 1 to be provided to a remove server over a communication network -- presumably the Internet.

Procedural History

On May 29, 2013, Lumen View filed suit against Findthebest for infringement of the '073 patent.  In its complaint, Lumen View contends that Findthebest infringes on the '073 patent in

---

[3]  Claims 5 and 6 are "method[s] according to [C]laim 4, and Claim 7 is a "method according to Claim 6."  But since Claims 4 is a "method according to Claim 1," Claims 5, 6, and 7 are all ultimately predicated on Claim 1.

[4]  An example of such a co-evaluator given in the Specification is a guidance counselor, whose preference data might play a role in the matchmaking between a college and a college applicant.

[O]ffer[ing] recommendation services via the
www.findthebest.com website ('Defendant Website') for
individuals seeking the purchase of products and
individuals offering to sell the products," by "execut[ing]
a computer implemented method for facilitating evaluation,
in connection with the procurement or delivery of products
or services, in a context of the operation of an
enterprise, such context involving a first class of parties
(e.g., consumers) in a first role and a second class of
counterparties in a second role (e.g., individuals selling
goods).

On September 24, Findthebest moved for judgment on the
pleadings on the ground that the '073 patent was invalid because
it claimed an "abstract idea," which does not constitute patent
eligible subject matter under Section 101 of the codified Patent
Act.  35 U.S.C. § 101.  The motion was fully submitted on
October 18.


DISCUSSION

The standard governing a Section 101 challenge is well
established.  "Whether a claim is drawn to patent-eligible
subject matter under § 101 is a threshold inquiry, and any claim
of an application failing the requirements of § 101 must be
rejected even if it meets all of the other legal requirements of
patentability."  In re Bilski, 545 F.3d 943, 950 (Fed. Cir.
2008) (citation omitted) (hereinafter "Bilski I").  A patent is
presumed to be valid by statute.  See 35 U.S.C. § 282.  The
party challenging the validity of a patent bears the burden of
proving invalidity by clear and convincing evidence.  See, e.g.,

<u>Pfizer, Inc. v. Apotex, Inc.</u>, 480 F.3d 1348, 1359 (Fed. Cir.

2007).   The question of whether a patent is invalid under

Section 101 of the codified Patent Act is an "issue of law."

<u>Bilski I</u>, 545 F.3d at 951.

<u>Section 101 of the Patent Act</u>

Section 101 of the codified Patent Act defines the subject

matter that is patentable:

> Whoever invents or discovers any new and useful process,
> machine, manufacture, or composition of matter, or any new
> and useful improvement thereof, may obtain a patent
> therefor, subject to the conditions and requirements of
> this title.

35 U.S.C. § 101 ("Section 101").   Section 101 lays out four

subject matter categories of inventions or discoveries eligible

for patent protection: processes, machines, manufactures, or

compositions of matter.   The '073 patent claims a "method for

facilitating evaluation," which plainly is a process.   Section

100(b) of the Patent Act provides that "[t]he term 'process'

means process, art or method, and includes a new use of a known

process, machine, manufacture, composition of matter, or

material."   35 U.S.C. § 100.   The Supreme Court has elaborated

on this statutory definition:

> A process is a mode of treatment of certain materials to
> produce a given result.   It is an act, or a series of acts,
> performed upon the subject-matter to be transformed and
> reduced to a different state or thing.   If new and useful,
> it is just as patentable as is a piece of machinery.   In
> the language of the patent law, it is an art.   The
> machinery pointed out as suitable to perform the process

> may or may not be new or patentable; whilst the process
> itself may be altogether new, and produce an entirely new
> result.  The process requires that certain things should be
> done with certain substances, and in a certain order; but
> the tools to be used in doing this may be of secondary
> consequence.

Diamond v. Diehr, 450 U.S. 175, 183-84 (1981).

Courts construe the Section 101 definitions broadly.  "In choosing such expansive terms ... modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope."  Diamond v. Chakrabarty, 447 U.S. 303, 308 (1980).  The Supreme Court has recognized, however, "three specific exceptions to [Section 101's] broad patent-eligibility principles: laws of nature, physical phenomena, and abstract ideas."  Bilski v. Kappos, 130 S. Ct. 3218, 3225 (2010)(citation omitted).  The three exceptions "are consistent with the [statutory] notion that a patentable process must be 'new and useful' . . . [and] have defined the reach of the [patent] statute as a matter of statutory stare decisis going back 150 years."  Id.  These exceptions protect from monopolization concepts that constitute "part of the storehouse of knowledge of all men ... free to all men and reserved exclusively to none."  Funk Brothers Seed Co. v. Kalo Inoculant Co., 333 U.S. 127, 130 (1948).  "Einstein could not patent his celebrated law that E = mc2; nor could Newton have patented the law of gravity."  Diehr, 450 U.S. at 185 (citation omitted).

I. Claim 1 of the '073 patent under Section 101

Findthebest contends that Claim 1 of the '073 patent is not drawn to patent eligible subject matter under Section 101 because the claimed process constitutes the abstract idea of matchmaking.   "[A]bstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." Gottschalk v. Benson, 409 U.S. 63, 67 (1972).  "A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right." Le Roy v. Tatham, 55 U.S. 156, 175 (1853).

Courts have had some difficulty defining with precision the line between an impermissibly abstract idea and a patentable process.  But the Supreme Court in the 2010 case of Bilski, 130 S.Ct. 3218, provided lower courts with some guidance in drawing the line.  Although declining to provide an authoritative definition of "process" for purposes of Section 101, the Court directed lower courts to look to, as "guideposts," its previous applications of the abstract idea exception in the cases of Benson v. Kappos, 409 U.S. 63, Parker v. Flook, 437 U.S. 584 (1978), and Diamond v. Dieher, 450 U.S. 175.  Bilski, 130 S.Ct. at 3231.  The Bilski Court said that the Federal Circuit's "machine or transformation" test, set out in Bilski I, 545 F.3d at 958, should serve as "a useful and important clue" and "an

investigative tool" for determining whether a patent claims
patent eligible subject matter under Section 101, in conjunction
with comparison of the above mentioned Court precedents, as part
of a holistic analysis.  Bilski, 130 S. Ct. at 3227.
Accordingly, to resolve this motion it is necessary to conduct a
holistic analysis of whether the '073 patent constitutes an
abstract idea in light of the precedents of Benson, Flook,
Dieher, and Bilski itself.[5]  As part of this analysis, the
"machine or transformation" test serves as a non-dispositive
"investigative tool."

A. The Supreme Court's Abstract Idea Cases

In the 1972 case of Benson v. Kappos, the Court invalidated
a patent that claimed "a method of programming a general-purpose
digital computer to convert signals from binary-coded decimal
form into pure binary form."  Benson, 409 U.S. at 65.  The
Benson Court held that the patent claimed not a patentable
process, but an algorithm which constituted an abstract idea.
The conceptual grounding of the court's holding was the
impermissible breadth of the preemptive effect of patenting such
a method.  The Court noted that "the patent would wholly pre-

---

[5] Bilski directs a court to look to the facts and holdings of
Benson, Flook, and Dieher as "guideposts" in determining whether
a claimed process constitutes and impermissible abstract idea.
It follows that Bilski itself should also be consulted in the
same fashion.

empt the mathematical formula [undergirding the conversion of binary decimals to pure binary form] and in practical effect would be a patent on the algorithm itself." Id. at 72.  The Court further emphasized the preemption concern in noting that the patent's "'process' claim is so abstract and sweeping as to cover both known and unknown uses . . . vary[ing] from the operation of a train to verification of drivers' licenses to researching the law books for precedents." Id. at 68 (citation omitted).

In the 1978 case of Parker v. Flook, the Court invalidated a patent that claimed a new process for monitoring certain catalytic conditions during the oil refining process.  The patent claimed a computer implemented method, which was undergirded by a mathematical formula by which monitors could be more easily alerted to dangerous developments during that process.  Relying on its holding in Benson that a mathematical formula constituted an abstract idea that could not be patented, the Court framed the question in Flook as "whether the identification of a limited category of useful, though conventional, post-solution applications of such a formula makes [a patented] method eligible for patent protection." Flook, 437 U.S. at 585.  The Court answered in the negative.  It held that post-solution application of an abstract idea to a particular field could not save a patent that fundamentally claimed an

12

abstract idea.  Id.  Even though the patent at issue in Flook was more limited in its preemptive effect than that in Benson given that it claimed a process which was restricted to a particular industrial refining process unlike the binary decimal conversion method of general applicability in Benson, the Court found that the only contribution made by the patent's claimed invention was a mathematical algorithm, which constituted an abstract idea.

The Flook Court also made clear that computer implementation of the claimed process did not save it from invalidity due to abstractness.  The Court invalidated that patent even though it, like the claim in Benson, was limited in being predominately tied to a computer in its application. Recognizing that "the abstract of disclosure makes it clear that the formula is primarily useful for computerized calculations," the Court nonetheless invalidated the patent's claims.  Id. at 586.

In the 1981 case of Diamond v. Dieher, the Court outlined the outer limits of the abstract idea in the course of upholding a patent that claimed a process for curing synthetic rubber. 450 U.S. at 184.  There, as in Benson and Flook, the challenged claim took the form of a mathematical formula.  The Court distinguished the claim at issue, however, under the guiding principle that the preemptive effect of patenting the process in

13

Dieher was more limited.  The Court reasoned that, unlike the patent in Flook -- which claimed a formula for computing an "alarm limit" which could be of general applicability -- the process claimed in Dieher was of restricted applicability to the rubber curing industry.  Id. at 186-87.

The Dieher Court also made two observations about the abstract idea exception to Section 101 patentability.  First, it stressed that "in a process claim . . . a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made."  Id. at 188.  Second, it emphasized that although Benson and Flook had invalidated process patents tied to computers, "a claim drawn to subject matter otherwise statutory [under Section 101] does not become nonstatutory simply because it uses a mathematical formula, computer program, or digital computer."  Id. at 187.  Instead, in "determining the eligibility of [a] claimed process for patent protection under § 101, [any] claims must be considered as a whole" to determine whether their applications to a particular context provides material of additional value beyond the abstract idea itself.  Id. at 188.  The Court stressed, however, that this holistic analysis "cannot be circumvented by attempting to limit the use of the formula to a particular technological environment."  Id. at 191.

Most recently, the Supreme Court addressed the abstract idea exception in the 2010 case Bilski v Kappos.  In Bilski, the Court invalidated as an abstract idea a business method patent that claimed a general method for hedging risk in the energy commodities market.  Bilski, 130 S. Ct. at 3223.  The independent claim in the Bilski patent read as follows:

> (a) initiating a series of transactions between said commodity provider and consumers of said commodity wherein said consumers purchase said commodity at a fixed rate based upon historical averages, said fixed rate corresponding to a risk position of said consumers;
> (b) identifying market participants for said commodity having a counter-risk position to said consumers; and
> (c) initiating a series of transactions between said commodity provider and said market participants at a second fixed rate such that said series of market participant transactions balances the risk position of said series of consumer transactions.

Id. at 3223-24.  Rejecting the Federal Circuit's application of the "machine or transformation" test as the exclusive test for determining Section 101 patentability, the Court relied on Benson, Flook, and Dieher to hold that the patent claimed an abstract idea and was invalid.  The Court held that "[t]he concept of hedging . . . is an unpatentable abstract idea, just like the algorithms at issue in Benson and Flook."  Id. at 3231. The Court also grounded its reasoning in concern about preemption.  It explained that "[a]llowing petitioners to patent risk hedging would pre-empt use of this approach in all fields,

and would effectively grant a monopoly over an abstract idea." Id. at 3231.

B. The Federal Circuit's Application of Bilski

After Bilski, the Federal Circuit worked to provide further definition to Bilski's somewhat open-ended test for determining process patent eligibility under Section 101.  In May 2013, the Federal Circuit attempted, unsuccessfully, to provide definitive guidance to lower courts adjudicating a claim of impermissible abstractness in its opinion in CLS Bank Int'l v. Alice Corp. Pty. Ltd., 717 F.3d 1269 (Fed. Cir. 2013) (hereinafter "Alice"). The patent holder in Alice claimed a computerized method of hedging risk in a two-party deal by enlisting a mutually trusted third party to ensure that each party complies with its payment obligation during the period between the making of the deal and the actual closing.  The patent holder had four patents.  The first two were "method" patents -- which "were directed to a method (i.e., process), while the claims of the [other two] Patents [were] directed to a [computerized] system or product" to implement that method.  CLS Bank Int'l v. Alice Corp. Pty. Ltd., 768 F. Supp. 2d 221, 223 (D.D.C. 2011).  The district court had held that both the method patents and the system patents claimed abstract ideas and were invalid under the "machine or transformation" test and the Supreme Court's precedents in Benson, Flook, Dieher, and Bilski.  Id.  The

Federal Circuit issued a per-curium opinion, wherein a majority of the court affirmed the invalidation of the method patents on the ground that they claimed an abstract idea while dividing 5-5 on the question whether the system patents claimed patent eligible subject matter.  Alice, 717 F.3d at 1273.

The Federal Circuit's reasoning fractured into five separate opinions.  One judge noted that

> Although a majority of the judges on the court agree that the method claims do not recite patent eligible subject matter, no majority of those judges agrees as to the legal rationale for that conclusion.  Accordingly, though much is published today discussing the proper approach to the patent eligibility inquiry, nothing said today beyond our judgment has the weight of precedent.

Alice, 717 F.3d 1269, 1292 n.1 (Fed. Cir. 2013).  Three different tests emerge from the five opinions.  First, Judge Lourie's opinion would ask a court to evaluate to what extent the claim avoids broad preemption by containing "additional substantive limitations that narrow, confine, or otherwise tie down the claim so that, in practical terms, it does not cover the full abstract idea itself," id. at 1282, with particular reference to whether the claim contains an "inventive concept . . . a genuine human contribution to the claimed subject matter." Id. at 1283.  Second, Chief Judge Rader proposed an inquiry less focused on preemption than Judge Laurie's, stating that "the relevant inquiry must be whether a claim includes meaningful limitations restricting it to an application, rather than merely

an abstract idea." Id. at 1299 (emphasis added).  "A claim may
be premised on an abstract idea -- the question for patent
eligibility is whether the claim contains limitations that
meaningfully tie that idea to a concrete reality or actual
application of that idea." Id. at 1299-1300.  Finally, Judge
Newman, writing only for herself, would eschew the
"abstractness" Section 101 inquiry altogether and hold that if a
claim fell into the enumerated categories of "useful arts," that
the inquiry should proceed to apply "the laws of novelty,
utility, prior art, obviousness, description, enablement, and
specificity . . . [obviating the] need for an all-purpose
definition of 'abstractness' or 'preemption,' as heroically
attempted." Id. at 1322.

     While Alice did not produce controlling reasoning, its
holding that the method claim patents were invalid has
precedential weight and must be followed by lower courts to the
extent that the facts regarding any patents challenged in those
courts are similar.  Moreover, while the Alice judges disagreed
on the fundamental methodology to apply in adjudicating patent
invalidation questions of this type and produced no binding
method, guidance can be drawn from any reasoning to the extent
that its interpretation of the Supreme Court's cases in this
area is persuasive.

C. <u>Applying the Supreme Court's and Federal Circuit's precedents to the '073 patent</u>

Applying the principles of <u>Benson</u>, <u>Flook</u>, <u>Dieher</u>, and <u>Bilski</u>, along with what guidance can be wrought from <u>Alice</u>, it is evident that Claim 1 of the '073 patent claims an abstract idea and does not qualify as a "process" under Section 101. The '073 patent claims the idea of bilateral and multilateral matchmaking using a computer in the context of a financial transaction or an enterprise.  It is preemptive in the broadest sense.  And its only real limitation -- the use of a computer -- constitutes mere post-solution application of an abstract idea to a common context.  The patent must be invalidated under any of the above described Supreme Court precedents as well as under either the Judge Laurie or the Judge Rader methodology in <u>Alice</u>.

1. <u>Preemption</u>

The first common thread in the above cases is concern that a patented process will preempt all applications of an abstract idea.  Concern about broad preemption undergirds the Supreme Court's precedent of patent invalidation in <u>Benson</u>, <u>Flook</u>, and <u>Bilski</u> and the Federal Circuit's invalidation of the method claims in <u>Alice</u>.  Applying that principle here, it is clear that the '073 patent cannot stand.  Put simply, the patent preempts the use of a computer to facilitate matchmaking.  Its preemptive breadth is enormous.  "Allowing [a patent holder] to patent [a

broad process] would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." Bilski, 130 S.Ct. at 3231.  Permitting Lumen View this level of preemption would be out of step with the balance the patent system has struck between promoting innovation and allowing the widespread use of new and productive inventions and discoveries.

The preemptive reach of Claim 1 of the '073 patent extends at least as far as that of the invalidated patent claims in any of the above described precedents.  For example, in Benson, the Supreme Court lamented that the claimed process of converting binary decimals was "so abstract and sweeping as to cover both known and unknown uses . . . vary[ing] from the operation of a train to verification of drivers' licenses to researching the law books for precedents."  Here, as there, permitting the patenting of bilateral or multilateral matchmaking using a computer would also cover "known and unknown uses," varying from the matching of online daters to securities traders looking for trading partners.  And while the invalidated Flook patent was at least limited to preempting the use of an alert system in the oil refining industry, Claim 1 of the '073 patent preempts the use of computer assisted matchmaking in the context of any transaction or enterprise.  Unlike the process held patentable in Dieher, which was directed to a specific application (rubber

curing), the '073 patent is a patent of general applicability.
Even the invalidated <u>Bilski</u> patent which the Supreme Court
admonishingly described as purporting "to patent both the
concept of hedging risk and the application of that concept to
energy markets," <u>Bilski</u>, 130 S.Ct. at 3229, at least specified a
market where its preemptive effect would presumably be
predominantly felt.

   2. <u>Absence of meaningful limitations</u>

        A second common thread in the above cases invalidating
patent claims for abstractness is that the patents lacked
sufficient limitations to direct the claim to a particular area.
This well established notion is embodied in Judge Rader's
proposed test in <u>Alice</u> that a claim must have "meaningful
limitations restricting it to an application, rather than merely
an abstract idea." <u>Alice</u>, 717 F.3d at 1299.  The "meaningful
limitations" inquiry is present in all of the above described
Supreme Court cases, most saliently in <u>Dieher</u>, where the
limitation of an algorithm to the oil processing field saved it
from invalidation on the ground of abstractness.  <u>Dieher</u>, 450
U.S. at 188.  Claim 1 of the '073 patent contains no meaningful
limitation on conventional matchmaking at all.  It is directed
to financial transactions and the operation of enterprises.  And
as is described below, the application of matchmaking to a

computer context is not a "meaningful" limitation that can save the Claim from invalidity.

3. Lack of genuine human contribution to the subject matter

The '073 patent would also fail Judge Laurie's proposed test in Alice, which requires an "inventive idea" constituting a "genuine human contribution" to the subject matter, such that the claim moves outside of the realm of abstract ideas and into the category of particularized inventions.  717 F.3d at 1283. There is no inventive idea here.  Having two or more parties input preference data is not inventive.  Matchmakers have been doing this for millennia.  Nor is an unspecified closeness of fit process an inventive idea.  It is merely a mathematical manifestation of the underlying process behind matchmaking: determining good matches.  Nothing in the '073 patent evinces an inventive idea beyond the idea of the patent holder to be the first to patent the computerization of a fundamental process that has occurred all through human history.

4. The role of a computer in the '073 patent does not render it patentable.

The abstract ideas exception to the Section 101 categories "cannot be circumvented by attempting to limit the use of the [idea] to a particular technological environment."  Dieher, 450 U.S. at 191.  The fact that the the '073 patent's matchmaking claim is implemented through a computer does not save it from

invalidation.  Indeed, all of the process patents invalidated in Benson, Flook, Bilski, and Alice were implemented by a computer. The Federal Circuit's most recent test for determining the relevance of a computer element of a claim in the Section 101 analysis is context specific.  "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not."  Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), L.L.C., 687 F.3d 1266, 1278 (Fed. Cir. 2012); accord SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations.").  Claim 1 of the '073 patent recites the process of a computerized retrieval of preference data from two or more parties and the computation of a closeness of fit test to match parties.  The steps in the Claim are: 1) retrieving the submitted preference data; 2) analyzing the data to compute a closeness of fit conclusion; and 3) providing a list.  These processes can be performed by a human absent a computer.  The computer element of the claim "function[s] solely

as an obvious mechanism for permitting [matchmaking] to be
achieved more quickly."  Id.

A slightly different test for the relevance of the
computer component to an otherwise abstract idea claim was set
forth by Judge Rader in her opinion in Alice.  Judge Rader
posited that:

> The key to this inquiry is whether the claims tie the
> otherwise abstract idea to a specific way of doing
> something with a computer, or a specific computer for doing
> something; if so, they likely will be patent eligible,
> unlike claims directed to nothing more than the idea of
> doing that thing on a computer.

Alice, 717 F.3d at 1302.  Under this test as well, the computer
element of Claim 1 does not save the claim from invalidation.
Neither Claim 1 nor the specification in the '073 patent
discloses any special way of programming a computer to achieve
the matchmaking function.  In other words, the '073 patent does
not disclose a specific method of using a computer to execute
the abstract idea of matchmaking, it only claims the abstract
concept of computerized matchmaking in a business or enterprise
context.

    D. The Machine or Transformation Test

As part of the holistic analysis required by Bilski, the
"machine or transformation" test serves as a useful non-
dispositive "investigative tool."  Bilski, 130 S.Ct. at 3227.
Under the "machine or transformation" test, "[a] claimed process

is surely patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." Id. at 3224 (citation omitted).  Claim 1 of the '073 patent fails both prongs of the "machine or transformation" test and therefore its application confirms the conclusion, predicated on the above analysis of Supreme Court precedent, that it cannot stand.

 1. Whether Claim 1 of the '073 patent is "tied to a particular machine or apparatus"

 Claim 1 recites "[a] computer-implemented method for facilitating evaluation," wherein "digital storage medium[s]" are used to hold inputted preference data and a computer performs "multilateral analyses" of each party's preference data to compute a "closeness of fit value."  This claim fails the machine prong of the machine or transformation test for two reasons.  First, the matchmaking functions claimed do not require a computer to be performed.  "[M]erely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prong of the machine-or-transformation test." Cybersource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1375 (Fed. Cir. 2011).  The core of the claimed process in Claim 1 of the '073 patent is the abstract idea of bilateral and multilateral matchmaking.  Matchmaking by having parties declare

preference data and deciding on good fits is a process as old as
humanity itself.  Adding a computer to the mix without showing
how the computer adds significant value constitutes mere "post
solution activity." Flook, 437 U.S. at 590.  And as Bilski
makes clear, "the prohibition against patenting abstract ideas
cannot be circumvented by attempting to limit the use of the
formula to a particular technological environment or adding
insignificant post-solution activity." Bilski, 130 S. Ct. at
3230 (citation omitted).

The Federal Circuit addressed a similar claim in which a
computerized process could be performed by a human alone in
Cybersource, 654 F.3d at 1366.  There, the claim at issue
recited a method of detecting fraud in credit card transactions
that were conducted over the Internet.  The patent holder
claimed that the patent was tied to a machine or apparatus
because the claimed process required the Internet in order to be
performed. Id. at 1370.  The district court rejected that
notion, and the Federal Circuit affirmed on the ground that the
Internet was not required to perform the core function in the
claim.  The Federal Circuit noted that "while [the claim]
describes a method of analyzing data regarding Internet credit
card transactions, nothing in [the claim] requires an infringer
to use the Internet to obtain that data." CyberSource, 654 F.3d
at 1370.  Similarly, here, the use of a computer to perform a

process humans can perform independently is insufficient to
fulfill the machine prong of the "machine or transformation"
test.

Second, Claim 1 of the '073 patent fails the machine prong
of the test because it is not tied to a "particular machine or
apparatus," as the test requires.  Lumen View argues that the
claimed process requires a "specifically programmed computer"
such that it satisfies the machine prong of the test.  This
contention is unavailing.  Merely directing a computer to
perform a function does not transform the computer into a
specialized computer.  Such a principle would lead to the absurd
result of allowing the patenting the computerized use of even
the most basic abstract ideas.  Given the ubiquity of computers
in modern life, adopting such a principle would have enormous
preemptive effect.  Nothing in Section 101 or the precedents
interpreting it allow a party to monopolize the building blocks
of innovation in a computerized world.  Moreover, as noted
above, all of the process patents invalidated in Benson, Flook,
Bilski, and Alice were implemented by a computer.  In none of
those cases was there any intimation that the patents could be
saved by virtue of the notion that the computers used were
somehow "specialized" by virtue of performing the abstract
processes at issue.  Consequently, to the extent that the
"machine" prong serves as an "investigative tool" it cuts

against holding that the '073 patent claims Section 101 eligible subject matter.

> 2.   Whether Claim 1 of the '073 patent "transforms a
> particular article into a different state or thing"

If a process is not tied to a particular machine then the "machine or transformation" test next asks whether the process produces a "transformation and reduction of an article to a different state or thing." Benson, 409 U.S. at 70. Lumen View argues that pulling preference data and creating a list derived from a closeness-of-fit analysis is transformative such that it fits this prong. This contention is unavailing.

The "transformation" prong originally contemplated physical transformation of a physical entity through a given process. By way of early example, in Dieher, the patent which the Court upheld under the transformation prong claimed a process that physically transformed raw, uncured rubber into molded, cured rubber products. See Dieher, 450 U.S. at 187. Later, a doctrine emerged allowing the transformation test to apply to manipulations of non-physical data. The Federal Circuit explained that:

> The raw materials of many information-age processes . . .are
> electronic signals and electronically-manipulated data. . .
> [raising the question of] [w]hich, if any, of these processes
> qualify as a transformation or reduction of an article into a
> different state or thing constituting patent-eligible subject
> matter?

Bilski I, 545 F.3d at 962.  The Federal Circuit drew a line in Bilski I in holding that the data manipulated must transform either a "physical object or substance, or an electronic signal representative of any physical object or substance."  Id. at 964 Applying that test to the facts at issue in Bilski I, the Federal Circuit declared that a computerized risk hedging process which transformed "public or private legal obligations or relationships, [or] business risks" did not fulfill the transformation prong:

> Purported transformations or manipulations simply of public or private legal obligations or relationships, business, risks, or other such abstractions cannot meet the [transformation] test because they are not physical objects or substances, and they are not representative of physical objects or substances.

Id. at 963.

Here, the preferences that are manipulated in the claimed matchmaking process do not represent physical objects or substances.  They are inapposite "abstractions" for purposes of the test.  Consequently, the transformation prong of the test also cuts in favor of invalidating the '073 patent.

II.  The Dependent Claims of the '073 patent are also Invalid

The eight dependent claims of the '073 patent rely on Claim 1's claim of the computerized matchmaking process.  The claims simply add broad, non-value added limitations to Claim 1's process of computerized matchmaking.  They are invalid for two

reasons.  First, all of the dependent claims expressly depend on the invalid Claim 1.  Claims 2, 3, 4, 8, and 9 are all disclosed as "method[s] according to claim 1."  Claims 5 and 6 are disclosed as "method[s] according to claim 4" (which is dependent on the invalid Claim 1).  And claim 7 is disclosed as a "method according to claim 6" (which is dependent on Claim 4, which in turn is dependent on the invalid Claim 1").  Without Claim 1, the claims are no longer grounded in anything and are incoherent.

Second, none of the limitations materially limit Claim 1 such that they could survive independently even if Claim 1 were not invalidated.  Claim 2 is simply the concept of adding a closeness of fit test to Claim 1.  Claim 3 adds the abstract idea of using data from external co-evaluators in the process.  Claims 4 and 6 claim the abstract idea of assigning a value to the preferences inputted.  Claims 5 and 7 claim the equally abstract idea of not revealing that value to the parties in the matchmaking process.  Finally, Claims 8 and 9 claim the quintessentially commonplace idea of using the internet.  It is clear that none of these limitations create a process that can survive under the foregoing tests.  None of them are tied to a particular machine nor do they transform anything.  And they are all even more abstract than the processes invalidated in Benson, Flook, Bilski, and Alice.

The dependent claims of the '073 patent are analogous to the dependent claims invalidated by the Supreme Court in <u>Bilski</u> following the Court's invalidation of the underling independent claim there.  <u>See Bilski</u>, 130 S. Ct. at 3231.  After invalidating the independent claim of the process of risk hedging in the commodities context, the <u>Bilski</u> Court invalidated the dependent claims on the ground that the "remaining claims are broad examples of how hedging can be used in commodities and energy markets."  <u>Id.</u>  The Court explained that "[t]these [dependent] claims attempt to patent the use of the abstract idea of hedging risk in the energy market and then instruct the use of well-known random analysis techniques to help establish some of the inputs into the equation."  <u>Id.</u>

The dependent claims in the '073 patent add similarly little value to those invalidated in <u>Bilski</u>.  Like the dependent claims in <u>Bilski</u>, the dependent claims here merely add to the unpatentable abstract idea of matchmaking the "well-known . . . analysis technique[s]" of: incorporating "closeness of fit" analysis (Claim 2); adding data from external co-evaluators (Claim 3); assigning a value figure to the preference data inputted (Claims 4 and 6); hiding that value figure from participants (Claims 5 and 7); and using the Internet (Claims 8 and 9).  Notably, although Findthebest devoted a section in its

initial motion as to why Claims 2-9 were invalid, Lumen View
failed to respond with any defense of those claims individually.

   III. <u>Lumen View's Arguments that the Motion is Procedurally</u>
        <u>Improper</u>

       Lumen View contends that a motion to invalidate a patent
based on Section 101 is premature at the motion to dismiss stage
for three reasons.  First, Lumen View argues that the only
relevant inquiry is whether it complied with the "Form 18" -- an
illustrative pleading form for patent cases in the Federal Rules
of Civil Procedure.  Second, Lumen View argues that the "clear
and convincing" evidence standard for patent invalidation means
that a patent usually should not be invalidated at the pleadings
stage.  And third, Lumen View somewhat contradictorily argues
both that this motion should not be decided before claim
construction has occurred and that the Court should adopt Lumen
View's proffered claim construction in deciding this motion now.

       Lumen View's Form 18 argument can be disposed of quickly.
Lumen View confuses the fact that compliance with Form 18 may
immunize a complaint from an attack on the <u>sufficiency of the</u>
<u>details pled</u>[6] with the notion that compliance with Form 18
prevents a legally meritless claim from being dismissed on the
pleadings.  Lumen View relies on the Federal Circuit's statement

_____

[6] Under the pleading standards enunciated in <u>Bell Atlantic Corp.</u>
<u>v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S.
662, (2009).

in In re Bill of Lading Transmission & Processing Sys. Patent
Litig., 681 F.3d 1323 (Fed. Cir. 2012), that "[a]s long as the
complaint in question contains sufficient factual allegations to
meet the requirements of Form 18, the complaint has sufficiently
pled direct infringement." Id. at 1336.  But the reason that
compliance with Form 18 was sufficient to save those claims from
dismissal at the pleading stage was that the patent-invalidation
"arguments all focus[ed] on whether the amended complaints'
allegations of direct infringement contain[ed] sufficient
factual detail to withstand attack under Twombly and Iqbal."
Id. at 1335.  In other words, compliance with Form 18 is usually
sufficient to defeat an argument that a pleading is
insufficiently detailed.  But compliance with a pleading form
cannot, of course, prove that a claim is legally meritorious.

        Second, Lumen View argues that the "clear and convincing
evidence" standard under which a patent invalidation motion must
be adjudicated makes resolution of this motion improper at this
procedural stage.  But as Lumen View concedes, a motion to
invalidate a patent on the pleadings is "not precluded, at this
stage."  It is true that "it will be rare that a patent
infringement suit can be dismissed at the pleading stage for
lack of patentable subject matter . . . because every issued
patent is presumed to have been issued properly, absent clear
and convincing evidence to the contrary."  Ultramercial, Inc. v.

33

Hulu, LLC, 722 F.3d 1335, 1338 (Fed. Cir. 2013).  But rare does
not mean never.  Whether a patent is valid under Section 101 is
a pure question of law.  And when "the only plausible reading of
the patent must be that there is clear and convincing evidence
of ineligibility" the patent must be invalidated at the pleading
stage.  Id.  As described in the foregoing, whether the '073
patent is addressed to Section 101 ineligible subject matter is
not a close question.  It is evident by clear and convincing
evidence that the patent is invalid.

Finally, Lumen View objects to the fact that this motion
was brought before claim construction has occurred.  At the same
time, Lumen View argues that "since the parties have already
filed their statement of [claim construction] this Court should
adopt Lumen View's proffered constructions in considering this
motion."  Findthebest urges that this motion be resolved absent
any claim construction, and in the alternative it consents to
use the construction of the claims submitted by Lumen View for
purposes of this motion.

While claim construction may sometimes be helpful in
resolving a Section 101 motion where detailed explication of the
claims in a patent would reveal material legal issues, the
Federal Circuit has said that "conducting a claim construction
analysis before addressing § 101" is "not required."  This is
"because eligibility is a 'coarse' gauge of the suitability of

broad subject matter categories for patent protection, . . .
[and therefore] claim construction may not always be necessary
for a § 101 analysis." Id. at 1339. In support of its holding
that claim construction is not required prior to a Section 101
analysis, the Federal Circuit has "cited [Bilski, 130 S. Ct. at
3225], noting that the Supreme Court 'f[ound] subject matter
ineligible for patent protection without claim construction.'"
Bancorp Servs., 687 F.3d at 1273.

This motion turns on the question of whether one
independent claim in the '073 patent claims a process that is
impermissibly abstract. The claimed process elements of Claim 1
are straightforward. No components are opaque such that claim
construction would be necessary to flush out its contours.
"[T]he question of eligible subject matter must be determined on
a claim-by-claim basis. Construing every asserted claim and
then conducting a § 101 analysis may not be a wise use of
judicial resources." Ultramercial, 722 F.3d at 1340. Here, the
Section 101 inquiry encompasses only "broad subject matter
categories" and claim construction is not necessary to reveal
any material legal issues and would not be "a wise use of
judicial resources."[7] Id.

---

[7] In any event, having examined Lumen View's proposed claim
construction, nothing contained in these submissions would alter
the outcome of this motion. In fact, Lumen View urged in its
claim construction brief that all of the claim terms which it

CONCLUSION

Claim 1 of the '073 patent claims an abstract idea, which is patent ineligible subject matter under Section 101 of the codified Patent Act.  The dependent claims are invalid as well.  Findthebest's September 24, 2013 motion for judgment on the pleadings is granted.  The Clerk of Court shall enter judgment for the defendant and close the case.


Dated:    New York, New York
          November 22, 2013

_____
                DENISE COTE
          United States District Judge

---

sought to be construed by the Court be construed according to their "plain and ordinary meaning[s]."