UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LUMEN VIEW TECHNOLOGY LLC,

        Plaintiff,

v.

FINDTHEBEST.COM, INC.,

        Defendant.

No. 13 CV 3599

ECF CASE

---

**DEFENDANT FINDTHEBEST.COM, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR DECLARATION OF EXCEPTIONAL CASE AND AWARD OF <u>FEES AND NONTAXABLE EXPENSES</u>**

**TABLE OF CONTENTS**

I. SUMMARY OF THE ARGUMENT ........................................................................................ 1
II. BACKGROUND ................................................................................................................ 1
   A. Lumen's Complaint and Immediate Settlement Offer ...................................................... 1
   B. FTB Requests That Lumen Withdraw its Baseless Complaint ......................................... 3
   C. Lumen's Attempt to Extort a "Licensing Fee" By Threatening Criminal Prosecution ..... 4
   D. Lumen Maintains Its Baseless Claims ............................................................................. 5
   E. Lumen's Litigation Scheme .............................................................................................. 6
III. FTB SHOULD BE AWARDED ATTORNEYS' FEES AND NONTAXABLE COSTS PURSUANT TO SECTION 285. ................................................................................................ 8
   A. This Case Should Be Declared "Exceptional" ............................................................... 10
      1. Lumen Brought Its Suit Against FTB in a Bad Faith Attempt to Extract a "Licensing Fee" ..... 10
      2. Lumen's Infringement Claims Against FTB Were Frivolous and Unjustified ........................... 11
      3. Lumen Engaged in "Offensive Litigation Tactics" ..................................................................... 13
   B. FTB Should Be Awarded Its Attorneys' Fees and Costs. ............................................... 14
IV. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Standard, Inc. v. York Int'l Corp.*,
   244 F. Supp. 2d 990, 997 (W.D. Wis. 2002) .................................................................... 11
*Boyd's Bit Service, Inc. v. Specialty Rental Tool & Supply, Inc.*,
   332 F. Supp. 2d 938, 943 (W.D. La. 2004) ...................................................................... 14
Computer Docking Station Corp. v. Dell, Inc.,
   519 F.3d 1366, 1379 (Fed. Cir. 2008) ................................................................................ 9
*Eltech Sys. v. PPG Indus.*,
   903 F.2d 805, 811 (Fed. Cir. 1990) ......................................................................... 8, 9, 13
*Eon-Net LP v. Flagstar Bancorp*,
   653 F.3d 1314, 1327 (Fed. Cir. 2011) .............................................................................. 11
*Highmark, Inc. v. Allcare Health Management Sys., Inc.*,
   687 F.3d 1300, 1308 (Fed. Cir. 2012) ............................................................................ 8, 9
*Hughes v. Novi Am., Inc.*,
   724 F.2d 122, 125 (Fed. Cir. 1984) .................................................................................. 13
*Kaehni v. Diffraction Co.*,
   342 F. Supp. 523, 536 (D. Md. 1972) .............................................................................. 14
*Kahn v. Dynamics Corp.*,
   508 F.2d 939, 944 (2d Cir. 1974) ............................................................................... 11, 13
*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) ............................................................................................ 9
*Mathis v. Spears*,
   857 F.2d 749, 753 (Fed. Cir. 1988) .................................................................................... 8
*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
   726 F.3d 1359, 1366-67 (Fed. Cir. 2013) .......................................................................... 9
*Multi-Tech, Inc. v. Components, Inc.*,
   708 F. Supp. 615, 620-23 (D. Del. 1989) ................................................................... 12, 13
*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
   549 F.3d 1381, 1388 (Fed. Cir. 2008) ................................................................................ 8

**Statutes**

35 U.S.C. § 101 .......................................................................................................................... 8
35 U.S.C. § 285 .................................................................................................................. 1, 8, 9
Federal Rule of Civil Procedure 54(d)(2)(c) ............................................................................ 14
Local Patent Rule 11 .................................................................................................................. 6
Local Patent Rule 12 .................................................................................................................. 6

Pursuant to 35 U.S.C. § 285, Defendant Findthebest.com, Inc. ("FTB") requests that the Court determine that this case is exceptional based on Plaintiff Lumen View Technology, LLC's ("Lumen") pursuit of objectively baseless claims against FTB, and award attorneys' fees and nontaxable expenses to FTB.

## I.   SUMMARY OF THE ARGUMENT

This case is the epitome of "exceptional." Despite knowing that FTB was not infringing its patent, Lumen filed and continued to pursue its claims against FTB in order to extract a nuisance settlement. Objectively baseless litigation is a pattern and practice of Lumen. Lumen brings serial lawsuits based on alleged infringement of its patent by legitimate businesses, like FTB, that use fundamental business-related concepts, even though they do not actually infringe. Lumen knew, or should have known, that FTB was not infringing its patent and either did not do—or just ignored—the results of proper due diligence and investigation into FTB's operations. Lumen uses the legal process and the threat of huge legal expenses associated with defending a patent infringement lawsuit, threats of criminal prosecution, threats of disruption to the target's business, and threats of public embarrassment, to attempt to extract "licensing fees" or settlements from FTB in exchange for a dismissal of the frivolous patent infringement lawsuit. Simply put, Lumen knew all along that FTB's accused services did not employ matching of two party preferences despite the patent claim's requirement. Lumen's conduct warrants an exceptional case determination and an award of attorneys' fees and costs to FTB.

## II.   BACKGROUND

### A.   Lumen's Complaint and Immediate Settlement Offer

Lumen filed its Complaint on May 29, 2013 accusing FTB of infringing U.S. Patent No. 8,069,073 (the "'073 Patent"). (*See* Dkt. No. 1.) The '073 Patent claims an abstract method

1.

of two or more parties evaluating whether they are a good fit for each other—a method that has been widely used for centuries, even prior to the advent of computers. In the Complaint, Lumen accused FTB's "recommendation services via the www.findthebest.com website" and the "AssistMe Results" of infringing its patent and included several conclusory allegations about the operation of the website that simply mirror the language of the patent claims. (*See id.* at ¶¶ 12, 13.)

On or about May 30, 2013, FTB received a letter from Lumen's attorney enclosing a copy of the Complaint. (*See* Declaration of Joseph S. Leventhal ("Leventhal Decl.") ¶ 2, Ex. 1.) Lumen's letter stated that FTB's "AssistMe feature meets one or more claims of the '073 Patent" and that the Complaint had already been filed in the Southern District of New York. (*Id.*) The letter further advised that a response to the Complaint must be filed within 21 days but, "[i]f Company is interested in avoiding the need for filing a responsive pleading, you must contact us (prior to the date of Company's Response) to discuss license terms." (*Id.*) The letter threatened that if FTB did not immediately pay Lumen a "licensing fee," Lumen would use the litigation process to disrupt FTB's business and increase expenses for FTB. (*Id.*) Specifically, the letter threatened "full-scale litigation" and "all motion practice as well as protracted discovery" if FTB chose to defend the litigation rather than pay a licensing fee. (*Id.*) The letter also warned that, if FTB "engage[d] in early motion practice," Lumen would "likely increase Plaintiff's settlement demand." (*Id.*) It also "advised" that "for each nondispositive motion filed by Company, Plaintiff will incorporate an escalator into its settlement demand to cover the costs of its opposition papers and argument." (*Id.*) The letter also made it clear that, if FTB fought Lumen's baseless patent infringement lawsuit, Lumen would ensure that FTB's key employees would be wrapped up in the litigation causing serious disruption to FTB's business. (*Id.*) In subsequent

conversations with Lumen's attorney, Lumen stated that it would settle the litigation for an $85,000 "licensing fee." (Leventhal Decl. ¶ 3.)

When FTB rejected Lumen's offer and informed Lumen that it would fight the frivolous lawsuit, Lumen made a last-ditch effort to persuade FTB to "settle" by dropping its licensing fee the day before FTB's answer was due to $55,000. (Leventhal Decl., ¶¶ 4-5.) Lumen stated that this "offer" was a "one-day only offer" that would expire when FTB filed its responsive pleading the next day. (*Id.* ¶5.)

### B. FTB Requests That Lumen Withdraw its Baseless Complaint

After the Complaint was filed, FTB's Chief Executive Officer and Director of Operations contacted Lumen's attorney to discuss the recently filed lawsuit and gain a better understanding of why Lumen believed FTB was infringing the '073 Patent. (*See* Declaration of Danny Seigle ("Seigle Decl.") ¶ 2.) When asked what research or due diligence was done that prompted the claims against FTB, Lumen stated that FTB "should trust that [Lumen] has done proper due diligence," but could not give any specifics when pressed for details. (*Id.* ¶ 3.) Lumen's attorney lacked any understanding of the publicly-available manner in which FTB's website operated and could give no factual explanation for why he believed FTB infringed the '073 Patent. (*Id.* ¶ 4.) Lumen's attorney could not explain, and lacked even a basic understanding of, the process purportedly covered by the '073 Patent. (*Id.*) FTB's Director of Operations explained in that conversation that FTB did not in any way use the bilateral or multilateral process disclosed by the '073 Patent. (*Id.* ¶ 5.) However, Lumen's attorney refused to discuss the merits of its infringement claim and simply reiterated Lumen's position that FTB would have to pay "licensing fees" to avoid costly litigation. (*Id.*)

FTB's attorney also attempted to gain additional information from Lumen's attorney about Lumen's infringement claims and explained that FTB's website performed only unilateral decision-making, which was not covered by the '073 Patent. (Leventhal Decl. ¶ 4, Ex. 2.) FTB's attorney specifically requested that Lumen's attorney identify the "second class" of parties allegedly present in FTB's system. (*Id.*) Lumen's attorney refused to do so.

### C. Lumen's Attempt to Extort a "Licensing Fee" By Threatening Criminal Prosecution

After it became clear that Lumen's attorney was not interested in discussing the merits of Lumen's infringement case, FTB's Chief Executive Officer, Kevin O'Connor, subsequently telephoned one of the inventors, Eileen Shapiro, and left a message explaining who he was and stating that he was calling to gain a better understanding of the claims alleged against FTB and the '073 Patent and explaining that he believed the lawsuit against FTB was meritless. (Declaration of Kevin O'Connor ("O'Connor Decl.") ¶ 6.) Subsequent to his initial message, Mr. O'Connor left another message for Ms. Shapiro. (*Id.* at ¶ 7.) Ms. Shapiro returned his call and Mr. O'Connor spoke with her about the lack of merit of Lumen's suit. (*Id.*)

Shortly thereafter, Lumen's attorney contacted FTB's counsel and stated that its CEO called Ms. Shapiro a "patent troll." (Leventhal Decl. ¶¶ 6-7.) According to Lumen's attorney, calling someone a "patent troll" constituted a "hate crime" under "Ninth Circuit precedent." (*Id.* ¶ 6.) Lumen's attorney then represented that Lumen and Ms. Shapiro would report FTB to Judge Cote and pursue criminal charges unless: (1) the CEO apologized to Ms. Shapiro; (2) FTB financially compensated Ms. Shapiro; (3) FTB financially compensated Lumen's attorney; and (4) FTB settled the civil patent infringement lawsuit by paying the $85,000 licensing fee that Lumen had previously demanded. (*Id.* ¶ 7.) The attorney further stated that the offer of the licensing fee was good until close of business that day and that FTB should "act quickly." (*Id.*)

### D. Lumen Maintains Its Baseless Claims

After FTB incurred the cost of filing an answer to the Complaint denying the allegations and serving initial disclosures, on August 30, 2013, Lumen served FTB with a Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") as required by the Local Patent Rules of the Southern District of New York. (*See* Leventhal Decl. ¶ 8, Ex. 3.) In its Infringement Contentions, Lumen asserted a single claim—claim 1—from the '073 Patent against FTB. (*Id.*) Lumen's contentions were vague, identified FTB's entire "website" as the "Accused Product or Service," and provided little supporting detail. (*Id.*) Lumen's appendices and figures attached to the claim chart contained screenshots from two sections of FTB's website, the written "About Us" and "Content Policy" pages, neither of which showed any features or functionality of the website in operation. (*Id.*) Lumen failed to even show an example of the accused AssistMe functionality, which is publicly available without registration or any other barriers to access.

Claim 1 of the '073 Patent purportedly covered a computer-implemented, multi-step process for decision making in a transaction, whereby two or more people provide responses to questions designed to reveal the value a party places on certain attributes, creating a "preference profile" for each respondent, which is then analyzed and matched against other parties' preference profiles to output a list that ranks how closely the party's preference profile matches those of other parties. (*See* Dkt. No. 1, Ex. A.) Claim 1 covered only circumstances where **two or more preference profiles are created and analyzed** ("bilateral and multilateral decision-making"); *e.g.*, it does not cover circumstances where **one** individual provides responses and only one preference profile is created ("unilateral decision-making") even if that preference profile is compared to attributes of another party. This is a crucial distinction that the

'073 Patent uses to distinguish its method from prior art: "Since the embodiment uses a preference profile *for both parties and counterparties* to evaluate the closeness of fit of preferences, it is a bilateral preference analysis method as opposed to the unilateral methods of the prior art." (*See* Dkt. No. 1, Ex. A at 4:48-52 [emphasis added] [explaining the method depicted in Fig. 2].) [1]  Claim 1 of the '073 Patent does not apply to the following four situations: (1) where a preference profile for only one party is created from forced choice questions; (2) where preference profiles are not created in response to forced choice questions; (3) where a conjoint analysis/statistical analysis is not applied to two or more preference profiles; and (4) where the parties do not rank or set a value to their responses to forced choice questions.

Shortly after Lumen's Infringement Contentions were served, the parties engaged in the claim construction process pursuant to Local Patent Rules 11 and 12, compiling a Joint Claim Term Chart and briefing their respective claim constructions. (Dkt. Nos. 26, 28, 38, 49.) Lumen argued that the claims should be construed according to their "plain and ordinary" meaning, but also proposed a series of convoluted alternative constructions, none of which extended the claims of the '073 Patent to cover unilateral decisionmaking. (*Id*.)

### E.  Lumen's Litigation Scheme

Lumen is the latest layer of "shell entity" created to recover any "licensing fees" or other monetary gains from litigation on the '073 Patent. Lumen's sole "business purpose, as exclusive licensee of [the '073 Patent]" is "to monetize the rights under '073 Patent (sic) as it 'possesses all rights of recovery under the '073 Patent, including the right to sue and recover all damages for

---

[1] *See* Dkt. No. 1, Ex. A, 4:11-5 [explaining the method depicted in Fig. 1 of generating two preference profiles based on each party's response to forced choice questions]; 13:32-25 [explaining the method depicted in Fig. 3, whereby a preference profile is "generated for each party"; 15:56-63 [explaining the method creates preference profiles for *each* party "using the party's answers to preference form questions"].)

infringement thereof, including past infringement.'" (Leventhal Decl. ¶ 9, Ex. 4 at 6.) Lumen, as a "shell entity," is undercapitalized, does not operate any legitimate business, and does not have any actual offices. As such, Lumen avoids numerous burdens of litigation – *e.g.* the disruption to business and the expense of compiling discovery responses – which it inflicts on its victims. Indeed, by way of example, Lumen used its "shell entity" status as an objection to providing fulsome discovery responses regarding basic patent litigation information such as the claimed priority date of the '073 Patent because it "is not an inventor, applicant or otherwise as being formed after issuance of the ['073 Patent], e.g. the '073 Patent issued on Nov. 29, 2011 and Lumen View Technology LLC…was incorporated/formed on 02/23/2012." (*See id.* at 10.)

In addition to FTB, in a span of about 15 months, Lumen sued 20 other companies on the '073 Patent, in industries as varied as job searching, educational recruitment, volunteer matching, carpooling, and dining recommendations. (*See* Leventhal Decl. ¶ 10.) With each suit, Lumen also sent form letters notifying each company of the litigation and requiring payment of a minimal fee to avoid a lawsuit. (*Id.* ¶ 11.) The suit against FTB was the last remaining: Lumen dismissed all the others early in the litigation, presumably after extracting the nuisance "licensing fee" or reaching other some agreement with the defendant to avoid the expense and distraction of defending a patent litigation lawsuit.

To further intimidate FTB, distract FTB from defending the patent infringement action, increase litigation expenses, and prevent FTB from taking steps to repair damage to its reputation, on October 22, 2013, Lumen filed a meritless motion seeking to prevent FTB from exercising its First Amendment right to speak with the media. (*See* Dkt. No. 32.) The motion was filed concurrently with a false declaration by Lumen's attorney contending that counsel for FTB and counsel for Lumen had entered into an oral agreement not to disclose settlement

discussion information.  (*See* Dkt. No. 34.)  The motion and false declaration were filed with the intent of compelling FTB to keep quiet about Lumen's business practices and to concede to Lumen's efforts to extract a "licensing fee."

On November 22, 2013, the Court invalidated the '073 Patent on FTB's motion for judgment on the pleadings and ended Lumen's campaign, finding that the '073 Patent claims the abstract idea of computer assisted matchmaking and is invalid under 35 U.S.C. § 101.  (Dkt. No. 55.)  Judgment was entered on November 26, 2013.  (Dkt. No. 56.)

### III.  FTB SHOULD BE AWARDED ATTORNEYS' FEES AND NONTAXABLE COSTS PURSUANT TO SECTION 285.

Section 285 provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "The purpose of Section 285 is to reimburse a party injured when forced to undergo an 'exceptional' case."  *Mathis v. Spears*, 857 F.2d 749, 753 (Fed. Cir. 1988).  By providing for reimbursement of attorneys' fees, Section 285 "prevents gross injustice where a party has demonstrated bad faith and misconduct during litigation," *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1388 (Fed. Cir. 2008) and to deter the "improper bringing of clearly unwarranted suits," *Mathis*, 857 F.2d at 754, 758.

Determining whether to award attorneys' fees under Section 285 is a two-step process. *Highmark, Inc. v. Allcare Health Management Sys., Inc.*, 687 F.3d 1300, 1308 (Fed. Cir. 2012) (*cert. granted* Oct. 1, 2013).  First, the moving party "must establish by clear and convincing evidence that the case is exceptional."  *Id*.  Second, if the case is deemed exceptional, the court "must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award."  *Id*.  The Court should consider "the totality of the circumstances" to avoid "gross injustice."  *Eltech Sys. v. PPG Indus.*, 903 F.2d 805, 811 (Fed. Cir. 1990).  Where, as here, the alleged infringer prevails in the underlying action, factors relevant to determining whether a case

8.

is exceptional include "the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012), quoting *Computer Docking Station Corp. v. Dell, Inc.,* 519 F.3d 1366, 1379 (Fed. Cir. 2008). Where a patentee "prolongs litigation in bad faith, an exceptional finding may be warranted." *Id.*

An accused infringer may establish that a case is "exceptional" by showing that a claim is "frivolous," that there has been inequitable conduct before the U.S. Patent and Trademark Office, or that misconduct during litigation has occurred. *Highmark,* 687 F.3d at 1308. It is a "well-established rule that litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366-67 (Fed. Cir. 2013) (*quoting MarcTec*, LLC, 664 F.3d at 919).

To show that a case is exceptional in the absence of litigation misconduct or inequitable conduct before the USPTO, the Federal Circuit has set forth two separate criteria that must be satisfied. *Id*. First, the accused infringer must show that the litigation was "brought in subjective bad faith" and, second, it must show that "the litigation is objectively baseless." *Id*. Objective baselessness "does not depend on the state of mind" of the patentee, but rather "requires an objective assessment of the merits." *Id*. at 1309. The "same objective/subjective standard applies for both patentees asserting claims of infringement and alleged infringers defending against claims of infringement." *Eltech Sys.,* 903 F.2d at 811. For an accused infringer to show that a case is objectively baseless, the infringement allegations "must be such that no reasonable litigant could reasonably expect success on the merits." *Id*. The "subjective bad faith" prong of the inquiry requires that the "lack of objective foundation for the claim was either known or so obvious that it should have been known" by the party asserting the claim. *Id*.

### A. This Case Should Be Declared "Exceptional"

This case should be declared exceptional on the grounds that Lumen filed this lawsuit for an improper purpose, the litigation was frivolous and unjustified, and Lumen engaged in litigation misconduct. Taken together, an exceptional case finding is warranted here.

#### 1. Lumen Brought Its Suit Against FTB in a Bad Faith Attempt to Extract a "Licensing Fee"

Lumen filed its Complaint against FTB without any probable cause and for the sole purpose of extorting "licensing fees" or a "nuisance settlement" from FTB based on an invalid patent. Lumen's lawsuit against FTB was part of a massive campaign to extract as many "licensing fees" as possible.

Immediately after it filed the complaint in this case, Lumen offered to dismiss the lawsuit if FTB paid an $85,000 "licensing fee." (Leventhal Decl. ¶ 3.) Given the extraordinary cost of patent litigation, most companies think carefully before spending hundreds of thousands, if not millions, of dollars in litigation when such an offer is on the table. When FTB rejected Lumen's offer and informed Lumen that it would fight the frivolous lawsuit, Lumen made its "one-day only offer," reducing its initial "licensing fee" offer by 35%. (*Id*. ¶ 5.) Contrary to its threats, Lumen never exponentially increased its settlement offer after FTB answered the complaint, instead reverting to its initial demand. (*Id*. ¶ 7.) Then, Lumen attempted to finalize a deal with FTB by threatening criminal prosecution. (*Id*.) It is clear that Lumen sued FTB, not because it believed that FTB was infringing the '073 Patent, but to exploit the high cost of defending a patent case to obtain a nuisance value settlement.

Moreover, Lumen has extracted nuisance settlements and minimal "license fees" from countless companies by threatening protracted and expensive litigation. (Leventhal Decl. ¶¶ 10-11.) Especially in light of Lumen's objectively unreasonable position with respect to the scope of the '073 Patent, it is clear that the true purpose of Lumen's litigation scheme is to profit from asserting—or threatening to assert—baseless claims of infringement. Such conduct makes this case exceptional. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (affirming district court declaration of exceptional case where plaintiff's case against accused infringer had "'indicia of extortion' because it was part of [plaintiff's] history of filing nearly identical patent infringement complaints against a plethora of diverse defendants" followed by a "demand for quick settlement at a price far lower than the cost to defend the litigation"); *see also Kahn v. Dynamics Corp.,* 508 F.2d 939, 944 (2d Cir. 1974) (affirming declaration of exceptional case where "the trial court inferred that Kahn's purpose in commencing this litigation was to force [defendant] to obtain a non-exclusive license under the [patent-in-suit] by threatening [defendant] with a suit, the defense of which would entail considerable expenses*"); Am. Standard, Inc. v. York Int'l Corp*., 244 F. Supp. 2d 990, 997 (W.D. Wis. 2002) (finding "plaintiffs' litigation tactics were in bad faith to force defendants into settlement and away from their legitimate defenses" and declaring case exceptional).

### 2. Lumen's Infringement Claims Against FTB Were Frivolous and Unjustified

Lumen's claim of patent infringement in this case depended entirely on the notion that the '073 Patent could be interpreted to encompass any kind of decisionmaking. Such position was "manifestly unreasonable," and Lumen's pursuit of infringement claims based on that position makes this case exceptional. *Eltech*, 903 F.2d at 811; *Multi-Tech, Inc. v. Components,*

*Inc.*, 708 F. Supp. 615, 620-23 (D. Del. 1989) (finding case exceptional where infringement claims were bases on unreasonably broad view of patent scope).

The '073 Patent relates only to bilateral and multilateral decisionmaking. (Dkt. No. 1, Ex. A.) As noted in FTB's briefing on claim construction, and as Lumen agreed, the specification of the '073 Patent repeatedly and consistently defines the purported invention to involve preference data from multiple parties derived from each party's answers to questions or selections. (*See* Dkt. No. 38.)

Despite overwhelming intrinsic evidence, Lumen chose to proceed with assertions of patent infringement against FTB, whose website performs only unilateral decisionmaking. Findthebest.com is a research hub that provides consumers with unbiased, data-driven comparisons of a wide array of search topics ranging from subjects such as smartphones, cars, and ski resorts. (*See* Leventhal Decl. ¶ 12, Ex. 5.) Only one party using FTB's website—the consumer visiting the website—inserts preferences. (*Id.*) The website then uses available information to match consumers with products/services matching their preferences. (*Id.*) Since only consumers create preferences, FTB does not apply a conjoint analysis to two preference profiles to compute a closeness-of-fit value. FTB simply matches consumers to products/services based only on one party's preferences: unilateral decision-making, not bilateral or multilateral decisionmaking.

FTB's services are public and transparent—the operations Lumen accuses of infringing are all available on the website. Lumen admits that it reviewed the website prior to filing suit, so it knew or should have known how FTB's website operated. (*See* Leventhal Decl. ¶ 9, Ex. 4 at 31.) At the inception of the litigation, FTB's executives explained these facts about FTB's website to Lumen's counsel. (Seigle Decl. ¶ 5.) FTB's counsel explained the facts to Lumen's

counsel numerous times. (*See* Leventhal Decl. ¶ 4, Ex. 2.) Moreover, Lumen's Infringement Contentions and the screenshots appended to it fail to demonstrate that Lumen performed an infringement investigation with the requisite diligence, much less that FTB's website performs bilateral or multilateral decision-making. (*See* Leventhal Decl. ¶ 8, Ex. 3.)

Lumen's pursuit of this case despite all of the intrinsic evidence limiting the '073 Patent to bilateral and multilateral decisionmaking "is evidence that the plaintiff's action were taken at the very least with gross negligence" making this case exceptional. *Multi-Tech*, 708 F. Supp. at 622; *Eltech*, 903 F.2d at 811 ("Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence.") Lumen's allegations of infringement, predicated on its disregard of all publicly available information and an unreasonable interpretation of its patents, was frivolous, was asserted without sufficient justification, and was prosecution in bad faith. On this basis alone, this case should be declared exceptional. *Multi-Tech*, 708 F. Supp. at 622; *Eltech*, 903 F.2d at 811; *see also Kahn,* 508 F.2d at 44 (affirming finding that case was exceptional where plaintiff "failed to use reasonable and responsible care in assessing his claims prior to and during suit and that suit was commenced and prosecuted in bad faith on the part of the plaintiff"); *Hughes v. Novi Am., Inc*., 724 F.2d 122, 125 (Fed. Cir. 1984) (affirming finding that case was exceptional where "even a cursory reading of the [patent] claim makes obvious the fact of noninfringement).

### 3. Lumen Engaged in "Offensive Litigation Tactics"

Beyond maintaining a frivolous and baseless litigation, Lumen engaged in litigation misconduct. For example, Lumen attempted to extort a settlement payment from FTB by threatening criminal prosecution of its CEO. (Leventhal Decl. ¶ 7.) Lumen also attempted to

prevent FTB from exercising its First Amendment right to speak with the media by filing a meritless motion for an extraordinarily broad "gag order" so that FTB would not expose Lumen's tactics to the public. (*See* Dkt. No. 32.) As yet another example, Lumen repeatedly claimed not to have information responsive to FTB's discovery requests because Lumen "is not an inventor [or] applicant" and was "formed after issuance of the patent-in-suit." (Leventhal Decl. ¶ 9, Ex. 4 at 10.) Despite this claim, the other "shell entities" earlier in the chain of title of the '073 Patent also refused to cooperate with discovery and, in turn, pointed back to Lumen. (*See* Leventhal Decl. ¶ 13, Ex. 6.) Such delay tactics and gamesmanship support a finding that this is an exceptional case. *Boyd's Bit Service, Inc. v. Specialty Rental Tool & Supply, Inc*., 332 F. Supp. 2d 938, 943 (W.D. La. 2004) (considering the "conduct of counsel" and "tactics of the parties" "relevant in the determination of whether exceptional circumstances are present").

### B. FTB Should Be Awarded Its Attorneys' Fees and Costs.

If a court deems a case exceptional, it may exercise its discretion to award attorneys' fees and costs. This Court should exercise its discretion to award FTB its attorneys' fees and costs in this case.[2] FTB did "everything in its power to end the litigation and avoid its enormous cost, and, in light of plaintiff's wholly unjustified conduct, it would be unconscionable and grossly unjust to now require [FTB] to bear the burden of this cost." *Kaehni v. Diffraction Co.*, 342 F. Supp. 523, 536 (D. Md. 1972).

---

[2] Should the Court grant this Motion, FTB requests leave to submit briefing regarding the amount of attorneys' fees and costs to be reimbursed. *See* Fed. R. Civ. P. 54(d)(2)(c) ("The court may decide issues of liability for fees before receiving submissions on the value of services."

## IV. CONCLUSION

For the reasons set forth above, FTB respectfully requests that the Court find that Lumen's suit against FTB is exceptional and grant its motion for attorneys' fees and costs.

Dated: December 10, 2013

Respectfully submitted,

By: /s/ Joseph S. Leventhal

JOSEPH S. LEVENTHAL
THE LEVENTHAL LAW FIRM, APC
600 West Broadway, Suite 700
San Diego, CA 92101
Ph: (619) 356-3518
Fx: (619) 615-2082
jleventhal@leventhallaw.com