UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUMEN VIEW TECHNOLOGY LLC,<br><br>       Plaintiff,<br><br>v.<br><br>FINDTHEBEST.COM, INC.,<br><br>       Defendant. | No.  13 CV 3599<br><br>ECF CASE |

**DEFENDANT FINDTHEBEST.COM, INC.'S REPLY IN SUPPORT OF ITS MOTION
FOR DECLARATION OF EXCEPTIONAL CASE AND
<u>AWARD OF FEES AND NONTAXABLE EXPENSES</u>**

## TABLE OF CONTENTS

I.   THIS CASE IS EXCEPTIONAL PURSUANT TO SECTION 285 ........................................ 2

   A.   Lumen's Lawsuit Was Frivolous and Unjustified .................................................. 2

      1.   The Litigation Against FTB Was Objectively Baseless .................................... 2

      2.   Lumen Brought the Litigation in Subjective Bad Faith ..................................... 3

   B.   Lumen Filed This Lawsuit for an Improper Purpose ............................................. 7

   C.   Lumen Engaged in Other "Offensive Litigation Tactics" ..................................... 8

II.  FTB'S MOTION SHOULD NOT BE DENIED PENDING APPEAL ................................. 9

III. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Digitech Image Techs., LLC v. Newegg, Inc.*,
  2013 U.S. Dist. LEXIS 147633 (C.D. Cal. Oct. 11, 2013) ........................................................ 6
*Eltech Sys. v. PPC Indus.*,
  903 F.2d 805 (Fed. Cir. 1990) ............................................................................................. 5, 6
*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011) ................................................................................................ 7
*Forest Labs., Inc. v. Abbott Labs.*,
  339 F.3d 1324 (Fed. Cir. 2003) ................................................................................................ 5
*Highmark, Inc. v. Allcare Health Management*,
  687 F.3d 1300 (Fed. Cir. 2012) ............................................................................................ 4, 5
*iLOR, LLC v. Google, Inc.*,
  631 F.3d 1372 (Fed. Cir. 2011) ............................................................................................ 3, 4
*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007) ................................................................................................ 4
*Kilopass Tech., Inc. v. Sidense Corp.*,
  2013 WL 6800885 (Fed. Cir. Dec. 26, 2013) ............................................................... 1, 4, 5, 6
*Mach. Corp. of Am. v. Gullfiber Ab.*,
  774 F.2d 467 (Fed. Cir. 1985) .................................................................................................. 5
*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  2013 WL 1309080 (S. Ct. Mar. 27, 2013) ................................................................................ 9
*Wireless Ink Corp. v. Facebook, Inc.*,
  2013 U.S. Dist. LEXIS 180182 (S.D.N.Y. Dec. 17, 2013) ...................................................... 8

**Statutes**

35 U.S.C. § 101 ................................................................................................................................ 6
35 U.S.C. § 285 ....................................................................................................................... *passim*
35 U.S.C. § 299 ................................................................................................................................ 6
Federal Rule of Appellate Procedure 4 ........................................................................................... 9

In *Kilopass Tech., Inc. v. Sidense Corp.*, 2013 WL 6800885 (Fed. Cir. Dec. 26, 2013), the Federal Circuit clarified the standard for the subjective bad faith prong of the exceptional case determination: a finding of subjective bad faith does not require ***actual knowledge***, as Lumen erroneously argues, but instead requires a showing that Lumen ***knew or should have known*** that its claim lacked foundation and acted recklessly based upon consideration of the totality of the circumstances. Lumen claims that its litigation against FTB was simply an effort to pursue a "patent infringement claim...pursuant to their [sic] rights under a valid patent." (Opp. at 10-11.) However, as the Federal Circuit reiterated in *Kilopass*, "one's misguided belief, based on zealousness rather than reason, is simply not sufficient by itself to show that a case is not exceptional in light of objective evidence that a patentee has pressed meritless claims." *Kilopass*, 2013 WL 6800885, *8. The facts show that Lumen litigated not under a "misguided belief," but pursued meritless claims in bad faith, using improper means, for the improper purpose of extorting licensing fees. This warrants an exceptional case finding.

Lumen presents no new evidence to rebut the conclusion that its litigation (1) was objectively baseless, and (2) was brought in subjective bad faith. As FTB's Motion establishes, Lumen's infringement claims against FTB were objectively baseless. Even a cursory examination of FTB's website conclusively demonstrates that FTB's system does not match two or more party preference profiles and, thus, does not infringe the claims of the '073 Patent. Lumen presents nothing to support the substance of its claims of infringement, relying only on the supposed procedural compliance of its complaint with Form 18 and its preliminary infringement contentions with the Local Rules. (Opp. at 12, 15.) Further, nothing in Lumen's Opposition alters the inexorable conclusion that it brought its suit against FTB in bad faith. Tellingly, Lumen offers no facts to bolster its conclusory statements that it "extensively

investigated its claim"—no billing records, no estimates of time spent, no identification of team members who performed the alleged investigation, no screenshots of FTB webpages reviewed—only a single statement that Lumen and its counsel performed "weeks of infringement analysis." (Opp. at 11; Wasserbauer Aff., ¶ 9.)[1]  Nor does Lumen dispute the facts FTB offers about Lumen's offensive litigation tactics, instead attempting to downplay its campaign to prolong the litigation and extort "licensing fees" by comparing its discovery conduct to that committed in other egregious cases.  (Opp. at 8-9.)  As demonstrated below, Lumen offers no factual or legal basis on which FTB's Motion could properly be contested and FTB's Motion should be granted.

## I.     THIS CASE IS EXCEPTIONAL PURSUANT TO SECTION 285

In its opening brief, FTB demonstrated that this case should be declared exceptional on three separate grounds:  the litigation was frivolous, unjustified, and brought in bad faith; Lumen's suit was filed for an improper purpose; and Lumen engaged in litigation misconduct. In response, Lumen makes conclusory allegations unsupported by evidence, attempts to rely only on the procedural compliance of its pleadings, and draws narrow factual distinctions between its conduct and the cases cited by FTB in an effort to downplay Lumen's conduct.

### A.     Lumen's Lawsuit Was Frivolous and Unjustified

#### 1.     The Litigation Against FTB Was Objectively Baseless

Rather than bolster its Infringement Contentions with *any* evidence showing that its infringement claims were well-founded, Lumen draws a smokescreen by pointing to FTB's allegedly "inconsistent" claim construction positions.  (Opp. at 15-16.)  Lumen is mistaken.

---

[1] FTB concurrently submits its January 17, 2014 letter brief objecting to paragraphs 7, 8, 9, and 10 of the Affidavit of Damian Wasserbauer in Support of Plaintiff's Memorandum in Opposition to Defendant's Motion for Attorneys' Fees and requesting that the Court strike them, on the grounds that they constitute hearsay, improper opinion testimony, and violate the best evidence rule.

FTB's interpretation of the scope of the claim language—*with which Lumen itself agreed in its proposed claim constructions*—has always been that the claims of the '073 Patent do not cover unilateral decisionmaking and require matching of preference data from at least two parties. (*See* Dkt. Nos. 26, 28, 38, 49.) Contrary to Lumen's assertions, the Court did not "approve" the substance of Lumen's Infringement Contentions. (Opp. at 18.) The Court simply evaluated whether Lumen's Infringement Contentions complied with the Patent Local Rules. (*See* Dkt. Nos. 17, 25.) Indeed, review of the documents Lumen appended to its Infringement Contentions demonstrates that FTB's website performs only unilateral decisionmaking and does not match preference data from at least two parties. (*See* Motion, Ex. 3.) In its Opposition, Lumen presents no evidence to the contrary. In view of the record evidence that FTB's website performs only unilateral decisionmaking, it is clear that Lumen's infringement claims were objectively baseless.

Lumen inflates the importance of the early stage of the litigation and the status of its infringement claims when the Court invalidated Lumen's patent. When the Court invalidated the '073 Patent, Lumen had disclosed its Infringement Contentions and FTB had disclosed its Invalidity Contentions, the parties had engaged in written discovery, and claim construction positions were fully briefed. There is ample evidence in the record for the Court to determine that Lumen's pursuit of its claims of infringement of the '073 Patent, which covers only the matching of preference data from two or more parties, against FTB's website performing only unilateral decisionmaking was objectively baseless. (*See* Motion at 12.)

### 2. Lumen Brought the Litigation in Subjective Bad Faith

Lumen relies on *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372 (Fed. Cir. 2011) to erroneously argue that the standard for evaluating exceptional case under § 285 requires Lumen

to "actually know" that its infringement claims were baseless. However, in *Kilopass*, the Federal Circuit expressly rejected any implication that *iLOR* imposed a heightened requirement:

> [T]o the extent that the district court did require actual knowledge of objective baselessness, it erred. The language from *iLOR* and *MarcTec* that Sidense interprets as requiring actual knowledge does not reflect this court's law governing § 285, and is dictum. As we made clear in *Highmark, Inc. v. Allcare Health Management*, 687 F.3d 1300 (Fed. Cir. 2012), subjective bad faith only requires proof that the "lack of objective foundation for the claim 'was *either* known *or* so obvious that it should have been known. *Id.* at 1309 (emphases added) (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc)). Thus, actual knowledge of baselessness is not required.

*Kilopass*, 2013 WL 6800885, *7. Instead, FTB need only prove that Lumen's conduct was reckless—that Lumen knew or should have known that its claims were baseless—to satisfy the subjective prong of the § 285 analysis.[2] *Id.*

Lumen attempts to paint a rosier picture of its investigation and litigation conduct than exists in reality, making the unsupported contention that Lumen "extensively" investigated infringement and "performed weeks of infringement analysis with respect to the FTB website." (Opp. at 11, 18; Wasserbauer Aff., ¶ 9.) Despite allegedly conducting this extensive, weeks-long analysis, which undoubtedly generated work product in order for Lumen and its counsel to "identif[y] on an element-by-element basis, presence of each claim limitation of claim 1 in the '073 patent in the FTB website," (Wasserbauer Aff. ¶¶ 9-10), Lumen submits nothing to the Court to prove up such an investigation. Lumen provides only conclusory statements from its litigation counsel—no names of individuals conducting the investigation, no affidavits of the alleged investigators, no billing records, no dates on which the investigation was conducted, no screenshots of pages from FTB's website showing that it performs two-party preference matching, and no offer to submit work product to the Court *in camera*. Silence speaks volumes.

---

[2] *Kilopass* was decided on December 26, 2013. Lumen's brief was filed on January 10, 2014 and cites *Kilopass*, yet utilizes the incorrect standard. (Opp. at 16.)

Given the baselessness of Lumen's infringement allegations, FTB doubts the veracity of Lumen's assurances that it conducted an adequate investigation.

The *Kilopass* court also noted that "[s]ubjective bad faith is difficult to prove directly, essentially requiring the discovery of a smoking gun, and evidence of a lack of subjective bad faith is easy to provide[.]"  *Id.*  Thus, "where 'the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith.'" *Id.*, quoting *Eltech Sys. v. PPC Indus.,* 903 F.2d 805, 811 (Fed. Cir. 1990) at 811. Further, when a patentee pursues claims that are devoid of merit, circumstantial evidence "such as the failure to conduct an adequate pre-suit investigation, vexatious or unduly burdensome litigation tactics, misconduct in procuring the patent, or an oppressive purpose are factors which can be indicative of bad faith. The wide variety of ways available to establish bad faith is why our case law has long required a party seeking fees under § 285 'to prove the other guilty of bad faith litigation by clear and convincing evidence ***in light of the totality of the circumstances.***'" *Kilopass*, quoting *Eltech*, 903 F.2d at 811 (emphasis in original); also citing *Highmark*, 687 F.3d at 1311 (quoting *Mach. Corp. of Am. v. Gullfiber Ab.,* 774 F.2d 467, 473 (Fed. Cir. 1985)); *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1330 (Fed. Cir. 2003) (considering the record as a whole in determining whether the patentee maintained its infringement counterclaim in bad faith).  In sum, *Kilopass* makes it clear that it is not just the hours or "weeks" of time Lumen spent on infringement analysis that is determinative of whether Lumen pursued its infringement claims with subjective bad faith.  What matters is the "totality of the circumstances," not just "evidence allegedly indicative of a party's good faith." *Kilopass*, quoting *Highmark*, 687 F.3d at 1311 and *Mach. Corp.*, 774 F.2d at 473.

"A wide variety of proofs can provide the requisite showing of bad faith under § 285" and "objective baselessness alone can create a sufficient inference of bad faith to establish exceptionality under § 285, unless the circumstances as a whole show a lack of recklessness on the patentee's part." *Kilopass,* quoting *Eltech*, 903 F.2d at 811.  Here, the baselessness of Lumen's claims, coupled with Lumen's litigation conduct and the purpose of its relentless pursuit of easy "marks" from whom to extract "licensing fees," taken as a whole, compel the finding that Lumen pursued its infringement claims against FTB in subjective bad faith.

Lumen emphasizes *Digitech Image Techs., LLC v. Newegg, Inc.*, 2013 U.S. Dist. LEXIS 147633 (C.D. Cal. Oct. 11, 2013) in support of its argument that a campaign of litigation designed to extract settlements ended by a determination of invalidity under § 101 is neither objectively baseless nor brought in bad faith.  Lumen's reliance is misplaced.  In *Digitech*, the court noted that Digitech's multiplicity of lawsuits was simply a function of the joinder requirements of the America Invents Act:  Digitech sued manufacturers and retailers of digital cameras that allegedly infringed its patents, which was dismissed for misjoinder under 35 U.S.C. § 299, forcing Digitech to refile each suit individually.  *Id*.  Moreover, according to the court, Newegg did not present admissible evidence that any "shake-down" negotiations took place.  *Id*.  In contrast, FTB has provided evidence that Lumen filed suit against FTB with no basis for its claims, offered to dismiss the lawsuit if FTB paid an $85,000 "licensing fee" prior to answering the complaint, and engaged in the same tactics with numerous companies.  (*See* Motion at 10-11; Leventhal Decl., ¶¶ 3, 5, 10-11.)  As the court in *Digitech* noted, "[o]f course, parties that abuse the patent system exist—that is what § 285 is for."  *Digitech*, 2013 U.S. Dist. LEXIS 147633.  Lumen's subjective bad faith in bringing an objectively baseless litigation in order to extract

6.

settlement payments is precisely the type abuse of the patent system that § 285 was designed to remedy.

### B.  Lumen Filed This Lawsuit for an Improper Purpose

Lumen asserts that both its attempt to obtain a nuisance settlement in this case and its practice of seeking and obtaining such settlements in countless other cases are essentially irrelevant to whether this suit was brought for an improper purpose. (Opp. at 18-21.)  Lumen is wrong.  To the contrary, as Lumen's demand letter reveals, Lumen's business model would likely not survive if Lumen did not force its targets to either (1) capitulate to a nuisance settlement or (2) spend many times the settlement amount defending this action.  (*See* Motion, Exs. 1, 2.)

Lumen contends that its prosecution of this case was simply a "[pursuit] of their [sic] rights under the '073 Patent."  (Opp. 14.)  However, in *Eon-Net*, the Federal Circuit noted that:

> Eon–Net argues that it is not improper for a patentee to vigorously enforce its patent rights or offer standard licensing terms, and Eon–Net is correct. But the appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith. Here, the district court did not clearly err when it found that Eon–Net filed an objectively baseless infringement action against Flagstar and brought that action in bad faith, specifically to extract a nuisance value settlement by exploiting the high cost imposed on Flagstar to defend against Eon–Net's baseless claims.

*See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011).  Lumen's litigation conduct, baseless claims, and settlement demands to FTB—and the 20 other companies it sued in 15 months—indicate that Lumen brought its litigation against FTB for an improper purpose and in bad faith.  Lumen cannot and does not explain how or why its campaign to extract "licensing fees" in this case is distinguishable from those cited at page 10 of FTB's opening brief, which hold, among other things, that a case may be declared exceptional where a defendant's purpose

7.

in commencing litigation is (1) "to force defendants into settlement" or (2) "to force" a defendant to take a patent license "by threatening [defendant] with a suit, the defense of which would entail considerable expenses." (*E.g.*, Motion at 11 (cases cited).)

Accordingly, Lumen's conduct in connection with its scheme to profit from asserting (or threatening to assert) baseless infringement claims is properly considered in connection with the application of § 285 here. Indeed, such conduct makes this case exceptional. (*See* Motion 11 (cases cited).)

### C. Lumen Engaged in Other "Offensive Litigation Tactics"

The only supposed explanation Lumen offers for its various other litigation abuses is that, when FTB's Director of Operations contacted Lumen's attorney, he "counseled" him to "obtain counsel" and "otherwise declined to discuss the specifics of Lumen's case[.]" (Opp. at 8; Wasserbauer Aff., ¶¶ 18-23.) However, Lumen offers no justification or explanation for the other conduct FTB identifies in its Motion. Instead, Lumen points to offending discovery conduct in other patent infringement cases, in essence claiming, "we're not *that* bad" because Lumen provided timely discovery responses. (Opp. at 8-9.) Lumen's efforts are unavailing, as are Lumen's efforts to tie itself to the result in *Wireless Ink Corp. v. Facebook, Inc.*, 2013 U.S. Dist. LEXIS 180182 (S.D.N.Y. Dec. 17, 2013). Lumen's timeliness and compliance with Court orders is not at issue. Lumen's efforts to "gag" FTB's executives, extort a "licensing fee" by threatening criminal charges against FTB and its executives, and hide discovery amongst "shell entities" in order to hide its tactics from public view are at issue. Rather than being attempts to navigate "a prolonged and complex litigation," Lumen's conduct was designed to prolong the litigation in the first instance in order to extract a "licensing fee" from FTB. (Motion at 4;

Leventhal Decl. ¶¶ 3, 5-7.)  As set forth in FTB's Motion, Lumen's tactics and gamesmanship support the finding that this is an exceptional case.  (Motion at 13.)

## II. FTB'S MOTION SHOULD NOT BE DENIED PENDING APPEAL

In its Opposition, Lumen asserts that FTB's Motion should be denied without prejudice pending "resolution of Lumen's pending appeal on the merits." (Opp. at 23.)  However, Federal Rule of Appellate Procedure 4(a)(4)(B) addresses the circumstance in which a notice of appeal is filed before the prevailing party files a motion for attorneys' fees. Such a notice "is, in effect, suspended until the motion is disposed of." Fed. R. App. P. 4(a)(4) (adv. comm. notes).  There is no reason to deviate from that procedure here.  Should the Court grant FTB's Motion, Lumen may appeal the order in conjunction with its currently-pending appeal.

Lumen also claims that "the Supreme Court's ultimate ruling in *Octane Fitness, LLC v. ICON Health & Fitness, Inc*. will potentially impact the standard for awarding fees under § 285." (Opp. at 23.)  The question raised in Octane's petition for certiorari is whether the Federal Circuit's two-part test for determining an exceptional case under 35 U.S.C. § 285 improperly appropriates a district court's discretionary authority to award attorney fees to prevailing accused infringers…thereby raising the standard for accused infringers (not patentees) to recoup fees and encouraging patent plaintiffs to bring spurious patent cases to cause competitive harm or coerce unwarranted settlements from defendants." *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 2013 WL 1309080 (S. Ct. Mar. 27, 2013).  FTB has established that an exceptional case finding is warranted under the current standard, much less any potentially lower standard issued by the Supreme Court in the *Octane* appeal.

9.

### III.     CONCLUSION

For the foregoing reasons, FTB respectfully requests that the Court grant its Motion for Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses.[3]

Dated:     January 17, 2014                                         Respectfully submitted,

By:   /s/  Joseph S. Leventhal_____

JOSEPH S. LEVENTHAL
THE LEVENTHAL LAW FIRM, APC
600 West Broadway, Suite 700
San Diego, CA 92101
Ph: (619) 356-3518
Fx: (619) 615-2082
jleventhal@leventhallaw.com

---

[3] Lumen argues that FTB's request for leave to submit briefing regarding the specific amount of attorneys' fees and costs to be reimbursed constitutes a "reckless pursuit" of attorneys' fees. (Opp. at n.9.) To the contrary, the evidentiary submissions supporting the amount of fees and costs is sensitive information for FTB and its counsel, and, as such, FTB believes it is only necessary to provide such information once it becomes relevant, *i.e.* upon the Court's determination that this is an exceptional case.