```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
Lumen View Technology, LLC,             :
                                        :
                      Plaintiff,        :    13 CIV. 3599 (DLC)
                                        :
            -v-                         :    OPINION & ORDER
                                        :
Findthebest.com, Inc.,                  :
                                        :
                      Defendant.        :
                                        :
----------------------------------------X
```

APPERANCES

For the plaintiff:

Damian Wasserbauer
Aeton Law Partners, LLP
101 Centerpoint Drive, Suite 105
Middletown, CT 06457

For the defendant:

Joseph Leventhal
Leventhal Law, LLP
600 West Broadway, Suite 700
San Diego, CA 92101


DENISE COTE, District Judge:

　　　Findthebest.com, Inc. ("FTB") moves for award of attorneys' fees and other expenses from Lumen View Technology, LLC ("Lumen View"), on the ground that this case is exceptional under 35 U.S.C. § 285 ("Section 285"). This is a prototypical exceptional case. FTB's motion is granted.

BACKGROUND

FTB is a corporation that operates a website which matches users with goods or services according to criteria that the users enter, at times using FTB's proprietary "AssistMe" program.  Lumen is a patent holding "Non Practicing Entity" that acquires patents and instigates patent infringement lawsuits.  Lumen appears to be a shell company that is one of a number of related companies involved in litigating patent infringement suits.  This motion arises out of a lawsuit brought by Lumen against FTB alleging infringement of United States Patent No. 8,069,073 ("'073 Patent").

I. The '073 Patent

Lumen became the exclusive licensee of '073 Patent on March 1, 2012, which was approximately a week after Lumen was formed. The '073 Patent was issued on November 29, 2011, and is entitled a "System and Method For Facilitating Bilateral And Multilateral Decision-Making."  The single independent claim of the '073 Patent states in full:

> We claim: A computer-implemented method for
> facilitating evaluation, in connection with the
> procurement or delivery of products or services, in
> a context of at least one of (i) a financial
> transaction and (ii) operation of an enterprise,
> such context involving a first class of parties in a
> first role and a second class of counterparties in a
> second role, the method comprising:

> In a first computer process, retrieving first preference data from a first digital storage medium, the first preference data including attribute levels derived from choices made by at least one of the parties in the first class;
>
> In a second computer process, retrieving second preference data from a second digital storage medium, the second preference data including attribute levels derived from choices made by at least one of the counterparties in the second class;
>
> In a third computer process, for a selected party, performing multilateral analyses of the selected party's preference data and the preference data of each of the counterparties, and computing a closeness-of-fit value based thereon; and
>
> In a fourth computer process, using the computed closeness-of-fit values to derive and provide a list matching the selected party and at least one of the counterparties.

The "summary of the invention" provision of the '073 Patent elaborates that:

> The method involves supplying to at least one of the parties a series of forced choice questions so as to elicit party responses; supplying to at least one of the counterparties a series of forced choice questions so as to elicit counterparty responses; and delivering a list matching the at least one party and the at least one counterparty according to analysis of preference profiles determined using conjoint analysis of the party responses and the counterparty responses.  In alternative embodiments the list may be ranked according to closeness of fit.

In sum, the purported invention disclosed by the '073 Patent is a method of matchmaking whereby one or more parties on each side input attribute preferences and intensity of preference data and then a computer matches the parties on each

3

side by a "closeness-of-fit" process and produces a list. On November 22, 2013, this Court held that the '073 Patent claimed an abstract idea, which was patent ineligible subject matter under the codified Patent Act, 35 U.S.C. § 101. <u>Lumen View Tech. LLC v. Findthebest.com, Inc.</u>, 13 CIV. 3599 (DLC), 2013 WL 6164341, at *16 (S.D.N.Y. Nov. 22, 2013).

    II.  <u>Prosecution History of Lumen's Lawsuit Against FTB</u>

Lumen filed its complaint (the "Complaint") against FTB on May 29, 2013, alleging that FTB infringed the '073 Patent. The Complaint was one of at least twenty substantially similar patent infringement complaints filed by Lumen against various companies in 2012 and 2013. The Complaint against FTB alleges a single claim of infringement of the '073 Patent's independent claim, and consists of conclusory allegations that mirror the language of the '073 Patent. The Complaint alleges that FTB had

> infringed and continues to infringe one or more claims of the '073 Patent by making, using, providing, offering to sell, and selling (directly or through intermediaries), in this district and elsewhere in the United States, a computer implemented method for facilitating evaluation, in connection with the procurement or delivery of products or services, in a context of at least one of a financial transaction and operation of an enterprise, such context involving a first class of parties in a first role and a second class of counterparties in a second role.

Specifically, Lumen alleges in the Complaint that FTB's website's "AssistMe" feature utilizes a computer implemented

4

method to match the preference data inputted by at least two parties who input preference data into the website:

> The Defendant Website retrieves first preference data from a digital storage medium, <u>the first preference data received from the individual(s) registering on and/or using the Defendant Website</u>, and assigns attribute levels based on the choices made by the individuals (first class of parties).  The Defendant Website retrieves the second preference data from a digital storage medium, <u>the second preference data received from the individuals registering on and/or using the Defendant Website</u>, and assigns attribute levels based on the choices made by the individuals (counterparties).

(emphasis added).  Despite these allegations, it is undisputed that FTB's website does not match preference data inputted on its website by multiple parties.[1]

On May 30, Lumen sent a demand letter to FTB, and enclosed the Complaint.  Lumen alleged that FTB's website "meets one or more claims of the '073 Patent."  Lumen invited FTB to "discuss license terms" if FTB wanted to "avoid[] the need for filing responsive pleadings."  Lumen's letter contained a number of threats suggesting that expensive litigation would follow if FTB did not quickly agree to a settlement.  Lumen stated that "[w]hile it is Plaintiff's desire that the parties amicably resolve this matter, please be advised that Plaintiff is

---

[1] Lumen's Preliminary Infringement Contention made a reference to the ability of users of the FTB website to add, and edit for accuracy, listings containing factual information about products and services.  But this does not constitute "preference" data.  Lumen does not argue otherwise here.

5

prepared for full-scale litigation to enforce its rights.  This includes all motion practice as well as protracted discovery."  Lumen threatened to increase its settlement demand every time FTB filed a responsive pleading.  Lumen warned that

> [s]hould [FTB] engage in early motion practice, however, we must advise that it will force us to reevaluate and likely increase Plaintiff's settlement demand.  Please be advised that for each nondispositive motion filed by Company, Plaintiff will incorporate an escalator into its settlement demand to cover the costs of its opposition papers and argument.

Lumen also demanded immediate preservation of electronically stored information ("ESI") from FTB, which, it contended "should be afforded the broadest possible definition."  Lumen advised FTB that it had an obligation to act to preserve ESI "in areas you may deem not reasonably accessible."  Lumen also suggested that FTB remove and sequester any devices potentially containing ESI from certain employees.  Lumen stated that it would "not hesitate to seek sanctions, court costs, or an independent action for spoliation where appropriate."

Shortly after the Complaint was filed, FTB's attorney contacted Lumen's attorney.  Lumen's attorney represented that Lumen would settle the case for an $85,000 "licensing fee."

On June 19, FTB CEO Kevin O'Connor and FTB Director of Operations Danny Seigle telephoned Lumen's attorney.  Seigle and O'Connor explained that FTB's website did not use a bilateral or multilateral preference matching process.  Lumen's attorney

stated that FTB "should trust that [Lumen] had done due diligence," but failed to provide any facts supporting the claim of FTB's infringement.  Lumen now contends that it "had no obligation to explain its infringement analysis."

On June 26, FTB's attorney sent Lumen's attorney a letter recounting the contents of a telephone call of the same day between the two.  FTB's attorney explained, inter alia, that Lumen's attorney was unable to describe the alleged second class of preference profiles used in FTB's "AssistMe" program, and that FTB consequently could not be infringing the '073 Patent.  FTB's attorney demanded a more specific description of the alleged infringement.  Lumen's attorney declined to provide any detail.  FTB's attorney advised Lumen's attorney that Lumen's conduct may "result in an 'exceptional case' determination under 35 U.S.C. § 285 entitling [his] clients to an award of attorneys' fees."

In "late June or early July" O'Connor telephoned Eileen Shapiro, one of the inventors of the '073 Patent.  Following a conversation between Shapiro and O'Connor, Lumen's attorney represented to FTB's attorney that O'Connor had committed a hate crime under Ninth Circuit law by using the term "patent troll."  FTB's attorney contends that Lumen's attorney threatened to pursue criminal charges unless FTB apologized, financially compensated Shapiro and Lumen's attorney, and settled the

7

litigation by paying Lumen a licensing fee in connection with the '073 Patent. FTB's attorney claims that Lumen's attorney stated that the offer was only good until the close of business that day and that FTB should "act quickly."

On July 7, the day prior to the due date for the filing of FTB's answer, Lumen offered FTB a "one-day only offer" to settle the litigation for a reduced licensing fee of $55,000. Lumen advised that the offer would expire if Lumen filed an answer. FTB answered the Complaint on July 8. Lumen did not follow through with the settlement demand escalator that it had threatened on May 30 in response to FTB's responsive pleading.

On August 30, Lumen served on FTB Preliminary Infringement Contentions ("PICs"), as required by SDNY Local Patent Rule 6. On September 19, FTB complained to the Court that the PICs were inadequately detailed and should be stricken or ordered modified. Following a telephone conference, the Court denied FTB's application on September 24.

On October 11, Lumen filed its claim construction statement. Lumen's proposed claim construction construed the independent claim of the '073 Patent (which Lumen alleged that FTB infringed) as requiring matching of preference data inputted by at least two parties. Lumen's proposed claim construction construed, <u>inter alia</u>, the following relevant portion of the independent claim:

8

```
       in a first computer process, retrieving first
       preference data from a first digital storage medium,
       the first preference data including attribute levels
       derived from choices made by at least one of the
       parties in the first class;
       [2] in a second computer process, retrieving
       second preference data from a second digital
       storage medium, the second preference data
       including attribute levels derived from choices
       made by at least one of the counterparties in
       the second class
```

Lumen stated that the term "preference data" should be construed "in conjunction with its plain and ordinary meaning." Lumen stated that "[t]he Court can simply let the 'plain meaning' of [the] term [preference data] speak for itself." Lumen's proposed construction of "preference data" was that "the term 'Preference data' is data generated for each <u>party based on the party's choices or selections made by the party or counter party to a set of questions.</u>" (Emphasis added.) Lumen also provided in its claim construction brief that "[t]he term 'first' modifies 'preference data' and . . . first class of parties in a first role is numerical succession designating a distinct set . . . ." Lumen further stated that "the term 'second' modifies 'preference data' and . . . second class of counterparties in a second role is numerical succession designating a distinct set . . . ."

On October 22, Lumen complained to the Court that persons associated with FTB were disclosing information about the

9

litigation and painting Lumen in a bad light.  Lumen moved for a gag order prohibiting FTB from discussing settlement negotiations publicly.  Lumen's application was denied in an Opinion of November 12.  Lumen View Tech. LLC v. Findthebest.com, Inc., 13 CIV. 3599 (DLC), 2013 WL 6003734 (S.D.N.Y. Nov. 12, 2013).  Lumen's patent infringement lawsuit against FTB was dismissed in an Opinion of November 22, 2013.  Lumen View Tech, 2013 WL 6164341, at *16.

FTB moved for a declaration that this was an "exceptional case" under Section 285 on December 10.  The motion was fully submitted on January 17, 2014.  On April 29, the Supreme Court of the United States issued an opinion in Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749 (2014), which addressed the definition of an "exceptional" case under Section 285.  The Court gave the parties an opportunity to make supplemental submissions regarding the significance of the Octane Fitness decision to this motion.  The parties made those submissions on May 16.

DISCUSSION

The Patent Act's fee shifting provision provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "[U]nder § 285 the interest of the patentee in protecting his statutory rights is

10

balanced by the interest of the public in confining such rights to their legal limits." Eltech Sys. Corp. v. PPG Indus., Inc., 903 F.2d 805, 810 (Fed. Cir. 1990). Recently, in Octane Fitness, 134 S. Ct. at 1749, the Supreme Court addressed the definition of an "exceptional" case.

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

Id. at 1756.

Octane Fitness abrogated the Federal Circuit's more rigid test, articulated in Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381-82 (Fed. Cir. 2005). Under the Brooks Furniture standard, a case was "exceptional" only upon a finding of litigation-related misconduct of an independently sanctionable magnitude, or a determination that the litigation was both brought in subjective bad faith and objectively baseless. Id. Such a finding had to be made by "clear and convincing evidence." Id. at 1382. The Octane Fitness Court articulated a more flexible, totality of the circumstances inquiry. It also replaced the "clear and convincing" evidence standard, with a "preponderance of the evidence" standard. Octane Fitness, 134 S. Ct. at 1758.

11

In directing courts to consider the totality of the circumstances, the Octane Fitness Court provided guidance as to the factors to be applied.  The Court pointed to a similar fee shifting provision of the Copyright Act, 17 U.S.C. § 505, and explained that under that provision, courts consider a "nonexclusive" list of factors, including "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  Id. at 1756 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)).  This articulation of a non-exclusive list of factors does not displace other factors relevant to the inquiry, including "a determination of what pre-filing preparation, if any, was done by" the plaintiff.  Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358, 1378 (Fed. Cir. 2001).  If a court finds a case "exceptional," it has discretion whether to award attorneys' fees.  Octane Fitness, 134 S. Ct. at 1756.

This case is "exceptional" under the totality of the circumstances test articulated in Octane Fitness.  First, Lumen's lawsuit against FTB was "frivolous" and "objectively unreasonable."  "To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits."  Dominant

Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (citation omitted).  No reasonable litigant could have expected success on the merits in Lumen's patent infringement lawsuit against FTB because the '073 Patent claimed a bilateral matchmaking process requiring multiple parties to input preference information, while FTB's "AssistMe" feature utilizes the preference data of only one party.  Lumen's own claim construction brief construed the independent claim of the '073 Patent as requiring two or more parties to input preference data.  That submission urged the term "preference data" to be construed "in conjunction with its plain and ordinary meaning."  And Lumen's Complaint alleged that FTB's infringement was predicated on the alleged use of bilateral preference matching.  But FTB does not employ bilateral preference matching.

And the most basic pre-suit investigation would have revealed this fact.[2]  See Superior Fireplace Co., 270 F.3d at 1378.  FTB's website contains no opportunity for bilateral preference matching or any suggestion that it is employed.  And if there were any confusion on this score -- and Lumen has provided no basis to find it was confused by the website -- Lumen was certainly on notice of this fact from the outset of

---

[2] Lumen claims to have conducted "weeks" of infringement analysis with respect to the FTB website, but offers no facts to support this conclusory claim.

13

the litigation.  FTB's Seigle and O'Connor informed Lumen that FTB's AssistMe feature did not use the bilateral or multilateral preference matching process in a telephone conversation of June 19.  And FTB's attorney again informed Lumen by telephone and by letter of June 26.  Yet Lumen proceeded with an obviously baseless lawsuit, failing to point to any specific way in which FTB infringed the patent.  "Where . . . the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence."  Eltech Sys., 903 F.2d at 811.

The "motivation" prong of the Octane Fitness test counsels as well in favor of a finding of an exceptional case.  Lumen's motivation in this litigation was to extract a nuisance settlement from FTB on the theory that FTB would rather pay an unjustified license fee than bear the costs of the threatened expensive litigation.  Lumen never sought to enjoin FTB from the allegedly infringing conduct in its prayer for relief.  Lumen's threats of "full-scale litigation," "protracted discovery," and a settlement demand escalator should FTB file responsive papers, were aimed at convincing FTB that a pay-off was the lesser injustice.

The "deterrence" prong of the Octane Fitness test also weighs in favor of an exceptional case finding.  The boilerplate nature of Lumen's complaint, the absence of any reasonable pre-suit investigation, and the number of substantially similar lawsuits filed within a short time frame, suggests that Lumen's instigation of baseless litigation is not isolated to this instance, but is instead part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation against even frivolous patent lawsuits.  The need "to advance considerations of . . . deterrence" of this type of litigation behavior is evident. Octane Fitness, 134 S. Ct. at 1756 n.6 (quoting Fogerty, 510 U.S. at 534 n.19).[3]

Lumen contends that the abbreviated nature of this litigation provides an inadequate record to find that the case is exceptional.  Lumen points specifically to the lack of a claim construction opinion by the Court, and contends that there is not sufficient evidence to find that its infringement claim against FTB was unreasonable.  This argument is unavailing.

---

[3] FTB also contends that Lumen's "offensive litigation tactics" provide an additional reason to find that this is an exceptional case.  FTB points to Lumen's threat of prosecution of FTB for allegedly using the term "patent troll," Lumen's attempt to obtain a gag order, and Lumen's (or those people behind Lumen's) use of a number of shell entities to avoid complying with discovery requests.  Because this case is "exceptional" even absent these considerations, it is unnecessary to address their merits.

There is no question that FTB does not employ the matching of multiple parties' preference data.  And Lumen's own claim construction brief construes the '073 Patent's independent claim as requiring the input of multiple parties' preference data.  (Indeed, the '073 Patent is entitled "System and Method for Facilitating Bilateral and Multilateral Decision-Making.").  Even under Lumen's proffered claim construction, no reasonable litigant could have expected success on the merits.  The fact that the Court adopted a schedule to reach the merits as expeditiously as was reasonable and to avoid imposing additional litigation costs on the parties does not counsel against a finding that this is an exceptional case.

Lumen also asserts that FTB's request for fees is "ultimately based upon the Court's recent determination of invalidity under Section 101 [of the '073 Patent]."  Lumen contends that it was entitled to rely on a duly issued patent.  The invalidity of the '073 Patent plays no role in the reasoning underlying this Opinion.  The question addressed here is whether Lumen could properly assert infringement based on the '073 Patent.  As such, Lumen's objection is misplaced.

Having found this case to be exceptional, this Court exercises its discretion to award attorneys' fees and costs to FTB.  The question of whether this cased is exceptional is not close, and fee shifting in this case will "serve as an

instrument of justice." Superior Fireplace Co., 270 F.3d at 1378 (citation omitted).

CONCLUSION

FTB's December 10, 2013 Motion for Declaration of Exceptional Case and Award of Fees and Nontaxable Expenses is granted. An Order will follow with a schedule for briefing with respect to the amount of fees and expenses to be awarded.

SO ORDERED:

Dated:   New York, New York
         May 30, 2014

_____
DENISE COTE
United States District Judge